

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-17-2003

# Massaro v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2138

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Massaro v. Comm Social Security" (2003). *2003 Decisions.* Paper 51.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/51

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2138

JANE E. MASSARO

v.

COMMISSIONER OF SOCIAL
SECURITY, KENNETH S. APFEL

Jane Massaro,
                    Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 99-cv-00204
District Judge:  The Honorable William H. Walls

Submitted Under Third Circuit LAR 34.1(a)
November 21, 2003

Before: RENDELL, BARRY, and MAGILL,[*] Circuit Judges

Filed December 17, 2003

OPINION

BARRY, Circuit Judge

---

[*] The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Appellant Jane Massaro ("Massaro") appeals the denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-43 ("Act"). The District Court exercised jurisdiction pursuant to 42 U.S.C. § 405(g), and appellate jurisdiction is vested in this Court under 28 U.S.C. § 1291.

We must affirm the District Court if it correctly found the decision of the Commissioner of the Social Security Administration (the "Commissioner") to be supported by substantial evidence. 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate;" it means "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations omitted). For the reasons set forth below, we will affirm.

## I. BACKGROUND

### A. Facts

The parties are familiar with the facts of this case. As a result, we will provide only a brief summary of those facts at the outset and will incorporate additional facts as they are relevant to our discussion of the issues. From 1985 to July 1988, Massaro worked as a stock clerk, cashier and receiver at Bradlees Department Store. She injured her back and neck while working on February 16, 1988. Although x-rays were normal, she had a contusion and sprain of her back and was told to rest for a week and given

2

medication.  She thereafter returned to work, performing light duties.  During this time, she was treated by her family physician, Dr. Nishitami.  Dr. Nishitami referred Massaro to Dr. Larsen for a Magnetic Resonance Imaging ("MRI") of the lumbar spine.  The MRI indicated early degenerative disease involving the discs at L3-4, but was otherwise normal.  Dr. Nishitami then referred Massaro to Dr. Abud, a neurological surgeon, for further evaluation.  Dr. Abud feared a L5-S1 herniated disc and ordered a myelogram, the results of which were normal.

In June 1988, Dr. Ruderman evaluated Massaro, who was complaining of pain in the sacral area.  Dr. Ruderman observed that she walked normally, although he noted she was limited on distance and favored her left leg.  In his opinion, she had a partial disability at 25%.

In July 1988, while trying to lift a heavy box at Bradlees, Massaro reinjured her back.  An MRI on August 8, 1988 showed no appreciable changes from the previous MRI.  Dr. McEliece maintained that Massaro did not need surgery and suggested a psychiatric evaluation if symptoms did not improve.

In April of 1989, Dr. Davis examined Massaro.  He wrote that she had good hand grips bilaterally and good flexion-extension at wrists and elbows.  The rest of his observations were in line with those of the other physicians.  He did note, however, that he was "suspicious that this is a non-organic problem" and that she "does not give full voluntary effort." Tr. 126-27.

In June 1990, Dr. Ruderman again examined Massaro.  Massaro once more

complained of pain in the sacral area. She could, however, walk and drive limited distances, although she did walk with a slight weight-bearing limp of her left leg. In Dr. Ruderman's opinion, she had a partial disability at 30%.

Massaro continued to see various doctors over the next eight years to treat her back, neck, and leg pain. She was diagnosed with Rheumatoid Arthritis in May 1997. In April 1998, Dr. Risi found her to be permanently disabled.

Meanwhile, on June 12, 1995, Massaro filed an application for benefits with the Social Security Administration ("SSA"). Massaro alleged that she became disabled as of July 26, 1988, at which time she met the disability insured status requirements. She acquired sufficient quarters of coverage to remain insured only through December 31, 1993. It was Massaro's burden to show that she was permanently and completely disabled by December 31, 1993 in order to qualify for disability benefits. 20 C.F.R. § 404.130.

*B. ALJ and District Court Proceedings*

The ALJ applied the familiar, five-step test, as outlined in 20 C.F.R. § 416.920, for evaluating an individual's claim for disability and supplemental security income benefits. There is no dispute as to the first three steps. In considering step four, or residual functional capacity, the ALJ determined that Massaro was incapable of returning to her previous job as a receiver at Bradlees, but could perform light work and return to her job as a cashier. Therefore, the ALJ concluded that Massaro was not disabled on

4

December 31, 1993.  The ALJ went on to note that had Massaro satisfied her burden at step four, she would still be "not disabled" at step five, as there exist jobs in the national economy she can perform.  The District Court found the Commissioner's final decision to be supported by substantial evidence.[1]

## II.  DISCUSSION

In this appeal, Massaro alleges with respect to the ALJ's determination that her residual functional capacity permitted light work activity that: (1) he did not adequately explain his conclusions; (2) his conclusions were not supported by substantial evidence of record; and (3) he did not follow mandated procedures to evaluate her complaints of pain.  Each of these alleged errors, argues Massaro, warrants reversal and remand.

An evaluation at step four involves the following three substeps: "(1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work."  *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120

---

[1]When, on November 13, 1998, the Appeals Council denied review of the ALJ's decision, that decision became the final decision of the Commissioner.  Massaro filed her complaint in the District Court within two months of that decision.  We find it both inexplicable and most disturbing that the District Court did not act on this matter until more than four years later.

(3d Cir. 2000) (citing 20 C.F.R. §404.1561; S.S.R. 82-86; *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1991)).

*A.  Did the ALJ Adequately Explain his Conclusions*

The ALJ categorized Massaro's cashier's job as light work and found Massaro could return to it because she had a residual functional capacity for light work.  "Light work" is work which:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

`Massaro relies on *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979), and *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981), in arguing that the ALJ did not adequately discuss which evidence he relied on and which evidence he rejected in reaching the conclusion that she had the residual functional capacity for light work.  Her reliance is misplaced.  In *Dobrowolsky*, two medical reports maintained that Dobrowolsky was disabled.  A vocational expert, on the other hand, testified that he was capable of sedentary work.  The

6

ALJ denied benefits based on this testimony and failed to explain why he afforded great weight to the vocational expert in light of the other medical evidence. *Dobrowolsky*, 606 F.2d at 405. Similarly, in *Cotter*, the ALJ gave great weight to a third physician's medical report that did not contain a clinical report or observation. The ALJ's failure to explain his implicit rejection of other expert medical testimony or even acknowledge its presence was deemed error. *Cotter*, 642 F.2d at 707. There was no such failure here where, also unlike *Dobrowolsky* and *Cotter*, the medical reports supported one another and suggested that Massaro suffered from a progressively debilitating disease.

Parenthetically, and unfortunately for Massaro, the medical reports did not indicate that she was disabled before December 31, 1993. *See Manzo v. Sullivan, M.D.*, 784 F.Supp. 1152, (D.N.J. 1991) (finding existence of progressive impairment that is not at a disabling level at relevant time insufficient to establish disability); *DeNafo v. Finch*, 436 F.2d 737 (3d Cir. 1971) (same). Indeed, Massaro did not even apply for disability insurance benefits until June 1995, perhaps because, as both the government and the evidence suggests and as the ALJ adequately explained, she did not experience significant functional limitations until that time.

B. *Are the ALJ's Findings Supported by Substantial Evidence*

Massaro next alleges various errors, which she contends illustrate that the ALJ's findings were not supported by substantial evidence. For example, she cites a passage

7

from the ALJ's decision where he notes that her testimony regarding her ability – or inability – to stand, push and pull is inconsistent with her testimony about her ability to perform chores. Massaro asserts that this testimony is consistent because she testified to performing chores in shifts, with breaks. Be that as it may, the ALJ did not rely solely on Massaro's testimony regarding chores to refute her testimony about her ability to sit and stand. The ALJ also questioned that testimony based on the medical reports, gaps in treatment, and the fact that Dr. McEliece and Dr. Davis seemed to question her motivation and effort.

Massaro also complains that the ALJ's definition of "light work" is not the same as the definition that the Commissioner has adopted. *See supra* at 6. The ALJ characterized light work as: "Work which requires maximum lifting of twenty pounds and frequently lifting of ten pounds; some light jobs are performed while standing, and those performed in the seated position often require the worker to operate hand or leg controls." Tr. 18. Not only does a plain reading of the ALJ's definition of light work lead to the conclusion that it does not diverge from the Commissioner's definition, but substantial evidence supports the ALJ's conclusion that Massaro could perform light work[2]

C. *Did the ALJ Fail to Properly Consider Complaints of Pain*

Allegations of pain are also to be considered in determining residual functional

---

[2]Because we find for the Commissioner at step four, we need not discuss the ALJ's alternative finding at step five.

8

capacity. Allegations of subjective symptoms such as pain must be consistent with objective medical evidence, *see Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529), and an ALJ must explain the reasons for rejecting such allegations. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). In *Hartranft*, we also noted that determining the extent to which pain affects one's ability to work "[o]bviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id.* at 362.

Massaro argues that the ALJ discounted her complaints of pain by omitting relevant portions of her testimony while distorting others, complaining, for example, that the ALJ took her ability to do housework out of context. We disagree. Massaro also takes issue with the fact that the ALJ only mentioned that she took Orudis, even though Dr. Nishitani also prescribed Relafen and Ultram. Dr. Nishitani's progress notes, however, confirm that during the relevant period, he only prescribed Orudis, a drug that Massaro herself confirmed was alleviating her pain.

The ALJ appropriately considered the medical findings, the sporadic treatment, and Massaro's activities, and concluded that her statements regarding pain were not entirely credible. In the words of *Hartranft*, the ALJ carefully determined "the extent to which . . . [Massaro] accurately stat[ed] the degree of pain [and] the extent to which [s]he [wa]s disabled by it."

## IV. CONCLUSION

We will AFFIRM the judgment of the District Court.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge