

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-1999

# Hartranft v. Apfel

Precedential or Non-Precedential:

Docket 98-1626

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Hartranft v. Apfel" (1999). *1999 Decisions.* Paper 136.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/136

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 18, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1626

WAYNE R. HARTRANFT,
      Appellant

v.

KENNETH S. APFEL, Commissioner
Social Security Administration

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 97-cv-04039
District Judge: Hon. J. Curtis Joyner

Submitted Under Third Circuit LAR 34.1(a)
February 12, 1999

Before: Becker, McKee, Circuit Judges
Lee, District Judge*

(Filed: May 18, 1999)

_____

*The Honorable Donald J. Lee, United States District Court for the
Western District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

McKEE, Circuit Judge.

Wayne R. Hartranft, appeals the District Court's affirmance of the Commissioner of Social Security's conclusion that Hartranft is not entitled to disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. SS 401-433. For the reasons that follow, we will affirm.

I. Procedural History and Standard of Review

Hartranft applied for DIB on May 3, 1994, alleging disability since January 29, 1990, due to numerous incidences of pain related to a back injury he suffered while working as a truck driver. In his application, he alleged disability due to back injury, neck pain, hernia, anxiety and depression. His application was initially denied, and denied again upon reconsideration.

Hartranft appealed the denial and was afforded a de novo hearing before an Administrative Law Judge. The ALJ found that Hartranft had residual functional capacity 1 for the full range of light work,2 diminished by his inability to bend repeatedly. The ALJ thus concluded that, although Hartranft had been injured, he was not "disabled" within the meaning of the Act at any time through December 31, 1995, the date his insured status expired.

On April 25, 1997, the Appeals Council denied Hartranft's request for review of the ALJ's decision, concluding that the ALJ's findings were supported by substantial evidence and that the ALJ committed no abuse of discretion or error of law. Consequently, the ALJ's

_____

1. "Residual functional capacity" is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s). 20 C.F.R. S 404.1545(a).

2. "Light work" is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects that weigh up to 10 pounds. 20 C.F.R. S 404.1567(b).

2

decision was the Commissioner's final decision on Hartranft's DIB claim.

Having exhausted his administrative remedies, Hartranft brought an action in the United States District Court for the Eastern District of Pennsylvania, seeking judicial review of the Commissioner's final decision. The matter was initially referred to a Magistrate Judge who issued a Report and Recommendation in favor of the Commissioner. Thereafter, the District Court adopted that Report and Recommendation and granted summary judgment in favor of the Commissioner. This appeal followed.

Our review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence. See 42 U.S.C. S 405 (g); Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d. Cir. 1986). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood , 108 S.Ct. 2541, 2545 (1988). See also, Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently. See 42 U.S.C.S 405 (g); Monsour Medical Center, 806 F.2d at 1190-91.

II. Facts

Hartranft sustained a work-related injury on November 20, 1989, while employed as a long-haul trucker by Ashland Chemical Company. Thereafter, Hartranft was examined by Raymond D. LaBarre, D.C., a chiropractor, because of complaints of lower back pain. LaBarre diagnosed Hartranft as having "acute sciatic neuralgia of L4, L5." (R. 101, 111). During a follow-up examination on December 27, 1989, LaBarre advised Hartranft "not to do anything heavy or any long distance truck driving as is his normal occupation." (R. 101). LaBarre also opined that Hartranft could work "relatively light duty." Id.

Richard K. White, M.D., an orthopedic surgeon, examined Hartranft on February 28, 1990. Dr. White's examination

3

revealed limited motion of the lumbar spine. However, Hartranft's station, stance, and gait were normal, and Hartranft had no specific abnormalities associated with his gait. He did experience some problems with his feet and raising his leg, but his toe and heel walking were normal and showed no evidence of muscle weakness. No other abnormalities were noted.

At the request of LaBarre, Hartranft was also examined by Charles R. Reina, M.D., Board-certified orthopedic surgeon, on May 25, 1990. Dr. Reina's report stated that Hartranft was able to walk without limp or complaint, and with a normal gait. His range of motion in both hips was full and without pain, and his neurological examination was normal. Upon re-examination on December 10, 1990, Dr. Reina again found no neurological abnormalities. The medical opinions of Dr. Reina do not "corroborate" LaBarre's findings, as Hartranft alleges. (Appellant's Br. at 24-25). To the contrary, Dr. Reina stated in his report that, based on his examinations of Hartranft, he couldfind none of the neurological abnormalities found by LaBarre. (R. 135).

LaBarre issued a report dated March 21, 1991, summarizing Hartranft's treatment to date, and indicating a "final diagnosis" of degenerative changes of the disc at L4-L5 and L5-S1, slight central disc bulging at L4-L5, and a small central disc herniation at L5-S1. (R. 118). In his report LaBarre opined that Hartranft would be unable to work "in any occupation where he has to bend, twist or lift, or in any occupation where he would have to stand or sit for any protracted period of time." (R. 119). LaBarre also opined that, "the accident of November 20, 1989, was the cause and is presently the cause of Mr. Hartranft's disability and injuries." Id.

On May 20, 1994, Frederick D. Burton, M.D. examined Hartranft at the request of LaBarre. Dr. Burton recommended that Hartranft continue with chiropractic care until his pain decreased and that he not return to his pre-injury job without restriction.

LaBarre continued to provide chiropractic care to Hartranft through November 1995. On February 10, 1996,

4

Hartranft returned to LaBarre's office complaining that he had experienced increased pain and discomfort since concluding his treatment three months earlier. LaBarre found some muscle weakness and continued degenerative disc disease, and urged Hartranft to continue chiropractic care.

At the hearing before the ALJ, Hartranft testified that he continued to work for more than two months following his November 1989 injury. (R. 32). He stated that he took only non-prescription Tylenol for his pain, adding that he did not like to take "pain killers" because they were addictive. (R. 28, 37, 39). He testified that he had a prescription from Dr. Burton for his "nerves" but nothing for pain. He also testified that LaBarre had him walking for exercise and doing light back strengthening exercises, but that he did not walk or exercise once worker's compensation stopped paying his medical bills.

Hartranft further testified that, despite his injuries, he attempted to go back to light duty work with his employer but was told they could not use him anymore. He also testified about a daily routine that included walking his daughter to the bus stop, helping his wife with the dishes, grocery shopping, driving a car, bathing, and dressing himself without assistance. (R. 48). In his May 3, 1994, Disability Report, Hartranft gave a similar description of the level of activity he was capable of engaging in, including visiting friends and relatives, walking, exercising, and helping with cooking.

The ALJ found that Hartranft did have a severe lumbar disc impairment and was unable to return to his past relevant work as a truck driver. (R.18, Findings Nos. 3, 6). The ALJ further found that Hartranft had the residual functional capacity for the full range of light work, diminished by his inability to bend repeatedly, and was thus not disabled under the Act. (R. 18-19, Findings Nos. 7, 11, 12).

III. Discussion

Hartranft relies, in part, upon evidence he introduced regarding his chiropractor's opinion of Hartranft's disability

to argue that the ALJ's determination is not supported by substantial evidence, and that the ALJ did not give the chiropractor's opinion adequate weight.

However, a chiropractor's opinion is not "an acceptable medical source" entitled to controlling weight. C.F.R. S 416.913 defines "acceptable source" for purposes of our inquiry as:

> (1) Licensed physicians;
>
> (2) Licensed osteopaths;
>
> (3) Licensed or certified psychologists;
>
> (4) Licensed optometrists for the measurement of visual acuity and visual fields . . . . and
>
> (5) Persons authorized to send . . . a copy or summary of the medical records of a hospital, clinic, sanitorium, medical institution, or health care facility. . . .
>
> (6) A report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence.

See also Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 327 (7th Cir. 1993); Walker v. Shalala, 993 F.2d 630, 632 n.2 (8th Cir. 1993); Lee v. Sullivan, 945 F.2d 687, 691 (4th Cir. 1991) (per curiam). Although DIB eligibility can not rest upon the opinion of a chiropractor, a hearing examiner can consider a chiropractor's opinion, along with all of the other evidence that a claimant may present insofar as it is deemed relevant to assessing a claimant's disability. See 20 C.F.R. S 416.913(e)(3) ("information from other sources may also help us to understand how your impairment(s) affects your ability to work. Other sources include, . . . (3) Other practitioners for example, chiropractors") (internal parentheses omitted).

Here, examinations by three board certified physicians failed to corroborate LaBarre's opinion of the extent of Hartranft's disability. None of these doctors identified the neurological abnormalities reported by LaBarre. Moreover, Hartranft's own account of the activities he was able to

6

perform was consistent with the medical observations of those three board certified physicians, and inconsistent with the degree of limitation that LaBarre reported. 3

Hartranft cites a report from Dr. Richard K. White, in which Dr. White stated that Hartranft should not be released for any kind of work. This report, however, was made in connection with Hartranft's workers compensation claim, not his DIB claim. We have previously recognized the different standards for determining disability under these two programs. See Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) (noting that "the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to worker compensation claims."). Here, the ALJ recognized the limited significance of Dr. White's report.

Finally, Hartranft argues that the ALJ failed to take account of his subjective symptoms, including pain, in determining that he could still perform the full range of light work. The ALJ determined that Hartranft had a discernible medical condition that could cause his pain, but that his statements concerning his pain and its impact on his ability to work were not entirely credible in light of the entire record.

Allegations of pain and other subjective symptoms must be supported by objective medical evidence. See 20 C.F.R. S 404.1529. Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. See 20 C.F.R. S 404.1529(c).

_____

3. Hartranft concedes that the ALJ need not be bound by the chiropractor's opinion, but argues that the ALJ erred in not relying upon the chiropractor's evaluation to corroborate the opinions of Dr. Reina and Dr. Burton. Appellant's Br. at 24. However, for the reasons we have recounted, we do not believe that the ALJ's treatment of the chiropractor's opinion was inappropriate.

7

Here, the ALJ concluded that Hartranft had a discernible medical condition that could reasonably cause the pain Hartranft complained of. However, the ALJ thought that Hartranft's testimony about the extent of his pain was exaggerated, and that Hartranft could perform light duty work despite his complaints of incapacitating pain. That ruling is clearly supported by substantial evidence in this record. The ALJ cited specific instances where Hartranft's complaints about pain and other subjective symptoms were inconsistent with: 1) the objective medical evidence of record; 2) Hartranft's testimony as to his rehabilitation and medication regimen; and 3) Hartranft's own description of his daily activities.

IV.

Accordingly, we will affirm the order of the District Court upholding the ALJ's decision.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

8