

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2003

# Phifer v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1002

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"Phifer v. Comm Social Security" (2003). *2003 Decisions.* Paper 37.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/37

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1002

DOROTHEA PHIFER,
O/B/O JEREMY N. PHIFER

v.

THE COMMISSIONER OF SOCIAL SECURITY

JEREMY N. PHIFER,

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No.  01-cv-02086)
District Court Judge: Honorable William L. Standish

Submitted Under Third Circuit LAR 34.1(a)
October 21, 2003

Before: ALITO, FUENTES, and ROSENN, Circuit Judges.

(Opinion Filed: December 22, 2003)

OPINION OF THE COURT

I.

As we write for the parties only, we do not extensively set out the background of this case. Jeremy Phifer, through his mother Dorothea, brought this claim for supplemental security income (hereinafter "SSI"). The ALJ denied the claim. The District Court upheld this decision. Phifer appeals to this Court. Because there was a proper waiver of counsel and because substantial evidence supported the Commissioner's decision, we find that none of Phifer's grounds for appeal have merit, and so we affirm the order of the District Court.

II.

This Court reviews the factual findings of the Social Security Commissioner under the substantial evidence test. The review is "limited to determining whether [the] decision is supported by substantial evidence." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks and citation omitted). This means that even if this Court would have made a different decision regarding the original application, the Court must affirm if substantial evidence supports the Commissioner's decision. Id.

2

III.

A.

Phifer argues that his right to counsel was violated. First, Phifer claims that he did not voluntarily and knowingly waive his right to counsel. Second, Phifer claims that as a result of the waiver his claim was prejudiced.

While there is no constitutional right to counsel at a social security disability hearing, a claimant does have a statutory and regulatory right to counsel at such a hearing. See Holland v. Heckler, 764 F.2d 1560, 1562 (11th Cir. 1985); 42 U.S.C. § 406; 20 C.F.R. §§ 404.1700-404.1707. The claimant must be provided with notice of his right to counsel and can waive this right as long as such waiver is knowing and intelligent. See, e.g., Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982) (describing how a claimant can"knowingly and intelligently waive his statutory right to counsel.") A waiver in and of itself is not a sufficient justification for remand. Rather, remand is proper where the lack of counsel prejudices a claimant or where the lack of counsel leads to an administrative proceeding marked by unfairness. Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980).

Phifer was clearly informed of his right to counsel and made a knowing and intelligent waiver of this right. First, the record shows that Phifer was given sufficient notice of his right to legal representation. In a letter to Phifer dated July 25, 2000 the

3

Social Security Administration (hereinafter "SSA") states that he had a right to representation. Tr. at 46. Another letter sent the same day by the SSA advised Phifer that he has the "right to be represented by an attorney or other representative of [his] choice." Id. at 50. This alone shows that Phifer was given adequate notice of his right to counsel. In addition, the ALJ, in his introductory remarks at the hearing, stated:

> In your notice of hearing, you were advised if you wanted to be, you could be represented by an attorney or some other qualified person of your choice, and, since you appeared without an attorney or a qualified representative, I assume you want to proceed with the hearing without an attorney or a qualified representative?

Id. at 25-26. Dorothea Phifer, Jeremy's mother, answered, "Yes," to this statement and question of the ALJ. Id. at 26. There clearly was a voluntary waiver of counsel by Phifer.

Second, assuming arguendo that Phifer did not give a knowing and intelligent waiver, a remand would be appropriate only if Phifer was prejudiced by the lack of counsel. Our review of the record, however, shows that this was clearly not the case. On the contrary, the ALJ made efforts to develop the record fully.

B.

Phifer also argues that the ALJ erred in finding that his impairment did not functionally equal in severity the criteria for an impairment listed in the regulations.[1]

In evaluating whether a child is disabled and eligible for SSI, the Commissioner

---

[1] Phifer concedes that his impairment does not meet requirements of a listing nor that it medically equals the requirement of a listed impairment.

4

applies a three-part sequential analysis. First, if the child is doing substantial gainful activity, the Commissioner will determine that the child is not disabled. 20 C.F.R. § 416.924(a). Next, if the child is not working, the Commissioner will determine whether the impairment of the child is severe. Id. Finally, if the impairment is severe, the Commissioner must determine whether the impairment "meets, medically equals, or functionally equals the listings." Id. To determine whether an impairment is functionally equivalent to a listing the Commissioner must determine that the impairment results in a marked limitation in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a (a). The domains which the Commissioner is to analyze are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. 20 C.F.R. § 416.926a (b)(1). A marked limitation is present where the impairment interferes seriously with one's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a (e)(2)(I). An extreme limitation is present where one's impairment "interferes very seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a (e)(3)(I).

The record indicates that the ALJ had substantial evidence to conclude that Phifer's impairments were not functionally equivalent to the listings. First, in the domain of acquiring and using knowledge, school notes indicated that Phifer was "able to access the general curriculum" while also requiring some "special language support." Tr. at 107.

5

His report card showed that his performance in all subjects except for Art was satisfactory. Id. at 87.[2] Other evidence supported the ALJ's opinion as well. A doctor noted that Phifer did not demonstrate any "significant articulation disorder" and that he was able to "comprehensively and coherently repeat" the given sentence. Id. at 159. An intelligence test administered in May 2000 showed that Phifer placed in the "high average" level in vocabulary. Id. at 160. His full scale intelligence test also showed that Phifer was in the low average range for his age group. Id. All of this constituted substantial evidence upon which to determine that Phifer did not have a marked limitation in this domain.

In the domain of attending and completing tasks, the Commissioner also had substantial evidence to conclude that Phifer's limitation was mild. An examination by Dr. Bernstein showed that Phifer was "highly cooperative," "compliant and responsive" to instructions, and showed no "signs of hyperactivity." Id. at 159. An evaluator from the Western Psychiatric Institute and Clinic reported that Phifer "played exceptionally well during session and appeared to have no difficulty staying on task." Id. at 181. This evidence supports a determination that a mild rather than marked or extreme limitation was present in this domain.

Turning to the third domain, interacting and relating with others, the ALJ again

_____

[2] In Art the teacher indicated that Phifer needed improvement. Also, the mark for homeroom indicated that improvement was needed but this seems to be because of Phifer's excessive number of absences. Tr. at 87.

6

had substantial evidence upon which to base his determination of only a mild limitation. The record indicates that Phifer related well with others. Though Phifer's mother and grandmother testified to problems in this domain, see Tr. 31-35, the observations of others strongly support the ALJ's determination. For instance Dr. Bernstein's report described Phifer as an "engaging child" who was "quite tractable and pleasant." Id. at 158. Phifer's teacher described him as "polite" and "respectful" and stated that he got along well with others. Id. at 169. A report from the school also stated that Phifer did not have temper tantrums, did not exhibit explosive or unpredictable behavior, was not uncooperative, and was never defiant. Id. at 170.

With regards to the fourth domain, there were no allegations of difficulty with moving about or manipulating objects. In the fifth domain, caring for oneself, there is not much evidence to consider.[3] There is simply less evidence in the record concerning Phifer's care of himself. However, even if we assume that a marked limitation was present, this does not change the disposition of this case, as no marked limitation was present in any other domain.

In the sixth domain, health and physical well being, there was substantial evidence that no marked or extreme limitation was present. When considering health and physical well being, the ALJ looks at the "cumulative physical effects of physical or mental

---

[3] The record certainly does not show any indication of an extreme limitation in this domain.

7

impairments and their associated treatments or therapies" upon the claimant's ability to function. 20 C.F.R. § 416.926a (l). Here, the objective evidence showed that despite the claimed limitations, Phifer was able to function quite well. Dr. Bernstein described Phifer as an "engaging child" who was "quite tractable and pleasant." Tr. at 158. In addition, Bernstein stated that Phifer exhibited no "signs of hyperactivity," was responsive to directions and "highly cooperative," was within the low average range of intelligence, and showed good fine and gross motor skills. Id. at 159-61. There was evidence that Phifer was prescribed Ritalin and Paxil, see id. at 128, but this was not done in response to deeply debilitating problems but to the mild symptoms reported in the record. Given Dr. Bernstein's objective evidence concerning Phifer, there was substantial evidence upon which the ALJ could have determined that no marked or extreme limitation was present in the sixth domain.

Because at the most a marked limitation was present in only one domain, Phifer's impairments were not functionally equivalent to any of the listings. Therefore, Phifer's claim was rightly denied.

IV.

We have reviewed Phifer's arguments and see no grounds for reversal. Therefore, we affirm the order of the District Court.

8