**Cynthia L. JOHNSON, Appellant,**

v.

**Jo Anne BARNHART, Commissioner of Social Security.**

No. 03–2648.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 23, 2004.

Decided March 9, 2004.

Peter M. Suwak, Washington, PA, for Appellant.

Stephen T. Giacchino, Social Security Administration, Philadelphia, PA, for Appellee.

Before RENDELL, BARRY and ROSENN, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Cynthia L. Johnson applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f (2003), on November 29, 1999. The Commissioner of Social Security denied her application after an administrative law judge ("ALJ") determined that Johnson could perform her past relevant work as a secretary and, alternatively, that she could perform other jobs that exist in significant numbers in the national economy. Johnson sought judicial review of the Commissioner's final decision in the United States District Court for the Western District of Pennsylvania. The District Court granted summary judgment in favor of the Commissioner, upholding the denial of benefits to Johnson, who now appeals that decision. Because substantial evidence supports the denial of Johnson's SSI application, we will affirm.

As we write solely for the parties, who are well aware of the extensive medical and treatment history involved in this case, we will recite only those facts relevant to an understanding of the issue before us. When she applied for SSI in 1999, Johnson was 43 years old and had been out of work since July 1, 1991, when she left her job as a housekeeper due to her alleged disability. She is a high school graduate and her relevant work experience also included employment as a secretary and a cafeteria worker. On her SSI application, she indicated that she suffered from degenerative joint disease, osteoarthritis of the spine and feet, fibromyalgia, depression, and nerve pain and numbness in her feet and hands. Johnson's application was denied in April of 2000[1] and, pursuant to an agen-

---

1. It appears as though this was Johnson's fourth attempt since 1991 to attain SSI payments. The ALJ indicated at the beginning of his opinion that prior applications submitted by Johnson in 1991, 1993, and 1995 were each denied, both initially and upon reconsideration. [Brief for Appellant at 46] After the denial of her first application in 1991, Johnson withdrew her request for a hearing before

cy test program in effect at the time, her claim went directly to the hearing level.

The hearing before the ALJ was initially postponed upon Johnson's request that she undergo a consultative psychological examination. After this one-time examination took place, the hearing reconvened in January of 2001. The ALJ considered the reports and records of various treating physicians, a reviewing psychologist, and the psychiatrist who consulted with Johnson on one occasion for the purposes of the hearing. Additionally, live testimony was offered by a vocational expert and Johnson, who was represented by counsel. On March 13, 2001, the ALJ issued a decision denying Johnson's application and finding that she was not disabled.[2] Specifically, the ALJ found that although Johnson suffered from certain severe impairments, she retained the residual functional capacity to perform her past relevant work as a secre-

tary and, in the alternative, that she could perform a range of light or sedentary work that exists in significant numbers in the national economy.[3]

Johnson sought review in the District Court, where the ALJ's decision was upheld, and she now appeals the matter to us.[4] We review de novo the District Court's grant of summary judgment, applying the same deferential standard in examining the ALJ's decision as the District Court did. *Newell v. Comm'r of Social Sec.*, 347 F.3d 541, 545 (3d Cir.2003). In other words, we ask whether the ALJ's findings are supported by substantial evidence. 42 U.S.C. § 405(g) (2003); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

an ALJ when she felt that her condition was improving. [*Id.*]

2. For purposes of gaining SSI payments under the Act, a claimant must show that she has a "disability," which is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). The "disability" must be of such severity that the claimant is not only unable to do her previous work, but also, considering her age, education, and work experience, cannot "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. § 416.905(a).

3. In evaluating Johnson's claim, the ALJ applied the familiar five-step inquiry set forth in 20 C.F.R. § 416.920. The five-step analysis requires the ALJ to consider the following factors: 1) whether the claimant is currently employed; 2) whether the claimant suffers

from severe mental or physical impairments; 3) whether those impairments, considered alone or together, meet or equal any listing created by the agency; 4) whether the claimant's residual functional capacity allows him to perform his past relevant work; and 5) whether the claimant is capable of performing jobs that exist in significant numbers in the national economy. Here, the ALJ found that Johnson is not currently employed, and that she does suffer from certain severe impairments. Because the ALJ determined that those impairments did not meet or equal any of the listed disabilities at Step Three, he moved on to consider Johnson's residual functional capacity and her ability to perform various types of work. According to the ALJ, Johnson's claim failed at Step Four—or, alternatively, at Step Five—due to her ability to perform her past relevant work, as well as other types of generally available light and sedentary jobs that would be tailored to her personal limitations.

4. The District Court had jurisdiction over Johnson's action under 42 U.S.C. § 405(g). We exercise jurisdiction over the appeal from the District Court's final order pursuant to 28 U.S.C. § 1291.

*Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citation omitted), *quoted in Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir.1999). In making this determination, we may not "weigh the evidence or substitute our own conclusions for that of the fact-finder." *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir.2002).

On appeal, Johnson essentially attacks the ALJ's decision on two grounds. She contends that she should have been deemed disabled at Step Three of the analysis, as her depression met or equaled an impairment under Listing 12.04 set out in the Appendix to the regulation promulgated by the Commissioner.[5] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 (2003). Relatedly, she argues that the ALJ improperly rejected the assessment of Dr. M.P. Patel, the agency-selected consulting psychiatrist who evaluated Johnson prior to the hearing. The Commissioner responds to both of these arguments, and also asserts that there was substantial evidence supporting the ALJ's conclusions at Steps Four and Five, as well as at Step Three. We will discuss each of these issues in turn.

First, we examine whether there is substantial evidence supporting the ALJ's determination at Step Three that Johnson's depression did not meet or equal the type of affective disorder contemplated in Listing 12.04. The Listing of Impairments created by the Commissioner provides a mechanism for streamlining the administrative process for certain applicants with especially severe impairments. *Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The Listing includes impairments that would prevent any adult from performing "any gainful activity," thereby disposing of the need for the agency to perform any further inquiry regarding the applicant's specific impairments before concluding that she is disabled. 20 C.F.R. § 416.925(a). Johnson seeks to classify her depression under Listing 12.04, which describes severe affective disorders and enumerates various sets of documented symptoms that must be present in order for an impairment to constitute a per se disability at Step Three.

Here, the ALJ stated that "a 12.04 depressive history" was noted by Dr. Patel, but that "the overall evidence is consistent with only mild 12.04 limitation[s]." He specifically linked his conclusion to the opinion of the reviewing psychologist, as well as reports including Johnson's own descriptions of her condition throughout the relevant time period. Further, the ALJ indicated that even if he were to credit Dr. Patel's conclusions and Johnson's subjective complaints in her testimony, her alleged symptoms of severe depression would not be sufficient to meet the Act's durational requirement, which calls for a condition to persist for a continuous period of at least one year before it can constitute a disability. *See* 42 U.S.C. § 1382c(a)(3)(A). Except for portions of Dr. Patel's report, no medical or psychiatric report indicates a degree of mental impairment—specifically, depression—that would be severe enough to invoke Listing 12.04. The only evidence which, if credited, would establish the type of symptoms described in Listing 12.04 pertained to Johnson's condition in the month immediately preceding the hearing. Without further evidence of a longitudinal problem with severe depression, we must conclude that there is substantial evidence in the record to support the ALJ's determination that Johnson could not be deemed disabled at Step Three.

---

**5.** We note that Johnson does not challenge any of the findings or conclusions related to her physical impairments, so we focus only on her claims related to the severity of her depression.

We next consider whether there is substantial evidence supporting the ALJ's decision not to give significant weight to the report of Dr. Patel and, specifically, his conclusions regarding the severity of Johnson's depression and its impact on her ability to work. Johnson contends that the ALJ should have accepted and credited Dr. Patel's findings because he was selected and retained as an independent expert by the ALJ, rather than by Johnson herself, and because he was the only mental health expert to personally examine Johnson. While an ALJ should generally assign more weight to the opinion of a doctor who has treated an applicant than to that of a doctor who has only reviewed documents, an ALJ remains free to disregard an examining doctor's conclusions if they are contradicted by other objective medical evidence. *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000).

A review of the record convinces us that there are a plethora of legitimate reasons explaining the ALJ's rejection of Dr. Patel's conclusions. The ALJ's decision, the District Court's opinion, and the Commissioner's brief each catalogue some or all of the following observations that serve to discredit Dr. Patel's report. Johnson never received any mental health treatment for her depression, nor did any of her treating physicians ever refer her to a psychiatrist. Dr. Patel's narrative findings described symptoms that are significantly less severe than his extreme checklist assessment of Johnson's mental and functional limitations indicates, and his report is internally inconsistent in that respect. Johnson's subjective complaints to Dr. Patel, which formed the major basis for his conclusions, were significantly different from the much milder complaints she shared with other medical professionals who treated her over the relevant time period. Johnson's sloppy appearance and troubled demeanor at her session with Dr.

Patel drastically differed from her condition at several physical therapy appointments in the weeks immediately preceding and following her meeting with Dr. Patel. Johnson's own description of her normal daily activities belied the limitations noted by Dr. Patel. The reviewing psychologist, who submitted a report based on an examination of Johnson's medical and psychiatric history, reached conclusions that were more consistent with the rest of the evidence, and that contradicted Dr. Patel's findings. And finally, Johnson's use of medication for her depression in an amount that is a mere fraction of the typical adult dosage implies that her depression is not as severe as Dr. Patel indicated. Taken together, these observations more than support the ALJ's rejection of Dr. Patel's conclusions.

Finally, we review the ALJ's determinations related to Steps Four and Five of the analysis to determine whether there is substantial evidence to support his ultimate denial of Johnson's application for SSI. To qualify as disabled for SSI purposes, a claimant must show that, based on her residual functional capacity, she can no longer perform her past relevant work. 20 C.F.R. § 416.920. If she satisfies that requirement, the burden then shifts to the Commissioner to show that the claimant can perform some type of work that exists in significant numbers in the national economy. *Id.*

Here, the testimony of the vocational expert, in conjunction with a vast majority of the medical evidence, provides substantial evidence to support the ALJ's findings related to the final two steps of the disability analysis. In response to hypothetical questions based on Johnson's medical and psychiatric records, as well as portions of her own subjective descriptions of her impairments, the vocational expert concluded that a claimant similar to Johnson would still be able to perform work as a sales

clerk, a general office clerk, or an assembler. In fact, nearly all of the evidence considered by the ALJ supports a finding that Johnson could still perform certain light and sedentary work, even considering her specific limitations, including her prior work as a secretary. Moreover, Johnson focuses her appeal exclusively on the ALJ's finding at Step Three. Aside from her assertion that Dr. Patel's report should have been credited more fully by the ALJ, she levels no specific challenges to the ALJ's conclusions related to the final two steps of the analysis and points us to no other potential problems with the evidence supporting those conclusions.

Therefore, we conclude that there is substantial evidence supporting the ALJ's finding that Johnson is not disabled. Accordingly, we will AFFIRM the order of the District Court granting summary judgment in favor of the Commissioner.