

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-2006

# Williams v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5491

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Williams v. Comm Social Security" (2006). *2006 Decisions.* Paper 101.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/101

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5491

BILLY WILLIAMS,
                                        Appellant

v.

JO ANNE B. BARNHART,
Commissioner of Social Security

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 04-cv-04979
District Judge:  The Honorable J. Curtis Joyner

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

Before: SCIRICA, Chief Judge, BARRY and ALDISERT, Circuit Judges

(Filed:  December 13, 2006)

OPINION

BARRY, Circuit Judge

    Billy Williams appeals from the order of the District Court adopting the Report

and Recommendation of the Magistrate Judge and affirming the decision of the

Administrative Law Judge ("ALJ") denying Williams social security benefits. Because we write only for the parties, who are already familiar with the facts of this case, we will not restate those facts except as necessary for our analysis. We will remand for further proceedings.

## I.

We have jurisdiction under 28 U.S.C. § 1291 over the final decision of the District Court. While our review is plenary, we are bound by factual determinations if "they are supported by 'substantial evidence' in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence" is sufficient "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)).

The Commissioner evaluates disability claims using a five step process. 20 C.F.R. §§ 404.1520 and 416.920. The ALJ must determine, in sequence, whether the claimant (1) is working and doing "substantial gainful activity," (2) has a "severe medically determinable physical or mental impairment," (3) has an impairment that would render the claimant *per se* disabled, (4) retains "residual functional capability" such that the claimant can perform past work, and (5) can perform other work existing in significant numbers in light of the claimant's residual functionality, age, education, and prior work experience. 20 C.F.R. § 404.1520. The claimant bears the burden of proof with respect to the first four steps, and the Commissioner bears the burden with respect to the last step.

2

The ALJ found that Williams was not performing any substantial gainful activity and had a number of severe impairments, including a history of depression and anxiety disorder, borderline intellectual functioning and learning disorder, polyneuropathy, and carpal tunnel syndrome. The ALJ further determined that Williams was not *per se* disabled. Therefore, the ALJ had to ascertain Williams' residual functionality, after which the burden would shift to the Commissioner to show that jobs that Williams could perform existed in significant numbers in the national economy. The ALJ found that Williams had "no significant exertional limitations" but had four non-exertional limitations. Based on a hypothetical question to the Vocational Expert, the ALJ concluded that there were a significant number of jobs in the national economy that Williams could perform considering his non-exertional limitations and, accordingly, denied benefits.

## II.

Dr. Cecilia Woods was Willaims' treating psychiatrist. Dr. Woods completed a Mental Residual Functional Capacity Assessment ("MRFCA") evaluating Williams. In the MRFCA, she concluded that Williams was markedly limited in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" because "his pain and fatigue" limited him. She also concluded that, although he was not cognitively limited, Williams was "markedly limited" in his ability to complete a normal workday and workweek without interruptions from psychological symptoms and without an unreasonable number and length of rest periods.

3

A-342.[1]  She noted that Williams "overextends himself, feels overwhelmed" and ends up

"more exhausted."  *Id.* at 343.  She also noted that Williams' depression and anxiety was

increased by the possibility that he would be diagnosed with muscular dystrophy.

The ALJ cited, correctly, to SSR 96-2p which interpreted the policy of the

Commissioner in giving "controlling weight" to "treating source medical opinions."  SSR

96-2p states that a medical opinion from a treating source "must be adopted" when four

characteristics are present: (1) the opinion must come from a "treating source" as defined

in the regulations, (2) it must be a "medical opinion" as defined in the regulations, (3) the

medical opinion must be "well supported" by "medically acceptable" clinical diagnostic

techniques, and (4) the medical opinion must be "not inconsistent" with other "substantial

evidence" in the record.  "Not inconsistent" does not mean that the opinion needs to be

"supported directly by all of the other evidence" so long as there is "no other substantial

evidence" that "contradicts or conflicts with the opinion."  SSR 96-2p.  SSR 96-2p also

states that medical opinions not entitled to controlling weight should not be rejected, and

they "are still entitled to deference and . . . [in] many cases, . . . will be entitled to the

greatest weight and should be adopted, even if it does not meet the test for controlling

weight."

The ALJ, while recognizing Dr. Woods as the "treating physician," accorded her

assessment "limited weight," crediting it only to the extent that it was "within her area of

---

[1] "A" references are to the Administrative Record in this case.

expertise" and was "supported by her own treatment notes." *Id.* at 21. The ALJ found that the assessment of Williams' pain and fatigue did not fall within Dr. Woods's area of expertise. We disagree. As a psychiatrist, Dr. Woods is qualified to evaluate the effects of her patients' illnesses and symptoms on their mental status. A psychiatrist is a medical doctor and can assess a number of physical and psychological symptoms, including whether a patient is truthful or malingering and the effect of pain and fatigue upon a patient's abilities and psychological makeup.

Furthermore, the ALJ found that, because Dr. Woods's notes indicated that Williams' depression/anxiety disorder was well maintained with medication, her determination of marked limitations was not credible. ALJs may not "improperly supplant" the opinions of treating and examining physicians with "personal observation and speculation." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Moreover, in *Morales*, we determined that it is not proper to reject a psychiatrist's opinion based on a notation that the patient is "stable with medication." *Id*. at 319. We stated that the "relevant inquiry" is "whether the claimant's condition prevents him from engaging in substantial gainful activity." *Id*. A conclusion that a disorder is controlled with medication does not support a conclusion that a patient can work. *Id*. Importantly, we stated that the principle that "an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving mental disability." *Id*. That principle is surely applicable here.

The ALJ's reasons for according only limited weight to Dr. Woods's opinion are

5

not based on substantial evidence, and we will remand for the appropriate weight to be accorded that opinion on its own merits and in light of the other evidence in the case, a substantial amount of which supported Williams' claim but was not mentioned by the ALJ, much less discussed.[2]

## III.

Neither the Magistrate Judge, nor the District Court when it adopted her Report and Recommendation, addressed Williams' argument that, although the ALJ found him not fully credible, the ALJ did not say why. The sum total of his finding was this: "The hearing testimony by claimant, as it relates to all times since September 2, 2002, is found <u>not</u> fully credible." Tr. 23 (emphasis in original). Nowhere in the ALJ's opinion is any reason given for this finding.

---

[2] We also note that the Magistrate Judge, in her Report and Recommendation adopted by the District Court, on more than one occasion evaluated evidence inaccurately and found facts not found or even discussed by the ALJ. She indicated, for example, that, based on Williams' performance in high school, his "mental emotional problems as a child which currently cause him some limitations" do not prevent him from working. But what is not mentioned is that in high school Williams was absent or tardy 117 days, and was significantly accommodated with respect to his movements around the campus and seating in class. The Magistrate Judge also found, incorrectly, that at least in part, Williams' testimony contradicted that of Dr. Woods. In particular, the Magistrate Judge mentioned that Williams wished to attend college and "sees his friends several times a week, and talks on the internet with them." The fact that Dr. Woods encouraged Williams does not contradict her opinion as to his ability to work a full time schedule. Moreover, the fact that, notwithstanding his considerable medical problems, Williams sees his friends and uses the internet does not lead to the conclusion that he is not markedly limited in his ability to perform activities within a schedule or complete a workday or workweek without interruption.

SSR 96-7p requires that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." The SSR further mandates that the "determination . . . *must contain specific reasons for the finding on credibility*, supported by the evidence in the case record, and must be sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p (emphasis added). These rulings are binding on the Commissioner, 20 C.F.R. § 402.35(b)(1).

Williams' credibility was critical; indeed, the Vocational Expert testified that if she accepted Williams' statements regarding his limitations as true, there would not be any job in the national economy that he could perform. The ALJ's conclusion with respect Williams' credibility was not explained and, thus, we have no way of knowing what, if any, evidence supported that conclusion.

## IV.

This matter will be remanded to the Commissioner for further proceedings consistent with this opinion. Given this disposition, we need not reach the various other issues raised by Williams.