

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2009

# Catherine Wilson v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2560

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Catherine Wilson v. Comm Social Security" (2009). *2009 Decisions.* Paper 1213.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1213

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 08-2560

_____

CATHERINE WILSON
Appellant

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,
Appellee

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 07-3469)
District Judge: Honorable Peter G. Sheridan

_____

Submitted Under Third Circuit LAR 34.1(a)
March 6, 2009

Before: SLOVITER and HARDIMAN, Circuit Judges, and POLLAK,* District Judge

(Filed: June 9, 2009)
_____

OPINION
_____

_____

   *  Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

POLLAK, <u>District Judge</u>:

Appellant Catherine Wilson appeals the order of the United States District Court for the District of New Jersey affirming the Commissioner's denial of her claim. The Commissioner, adopting the decision of the Administrative Law Judge ("ALJ") who evaluated the claim, found that Wilson retained the residual functional capacity to perform her past relevant work as a data-entry clerk and so denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Wilson also seeks to supplement the record with material she says is essential to support the argument that the ALJ failed to consider the progressive worsening of her condition. We will deny the request to supplement the record and will affirm the Commissioner's decision.

**I.**

Because the parties are familiar with the facts and the record, we need not discuss them in detail. Wilson is a 52-year old woman with a high school diploma. In the past, she has worked as a data-entry clerk and then an assistant manager for a brokerage firm, in part requiring her to scan images, enter data, pack boxes with paper, and store the boxes (which could weigh up to 15 pounds) on shelves. She has also worked as an assistant merchandise coordinator and at a warehouse as an expediter. She last worked in November 2002.

Wilson alleges disability beginning January 1, 2004 because of a back condition,

arthritis, diabetes, sleep apnea, high blood pressure, obesity, and asthma. She testified at her hearing before the ALJ on March 13, 2007 that she was experiencing intense back pain such that she could barely get out of bed. She also said that she had difficulty breathing, in addition to her back pain, that made it difficult to walk even for a short distance. Physical therapy had proven unsuccessful and an orthopedist advised against a back operation. Wilson's medical records were extensively reviewed by the ALJ, *see* A.R. 18-21; the medical evidence establishes a history of asthma, sleep apnea, hypertension, obesity, diabetes, back pain as a result of arthritis, and chest pain.

The ALJ, applying the analytic framework set out by 20 C.F.R. § 416.920(a), found that (1) Wilson had not engaged in substantial gainful activity since the alleged onset of her disability; (2) Wilson's impairments, including her asthma, obesity, hypertension, diabetes, and low back pain, were severe; (3) her impairments, though severe, did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App'x 1; (4) Wilson retained the residual functional capacity to perform her past work as a data-entry clerk.

At this fourth step, the ALJ found that Wilson's medically determinable impairments could reasonably be expected to produce the problems she testified to experiencing, but that Wilson's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not entirely credible. He concluded that she retained the residual functional capacity to "perform work involving lifting and carrying

3

objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking, and sitting up to six hours in an eight-hour workday; pushing and pulling arm and leg controls; involving no greater than simple tasks; in an environment free of excessive pulmonary irritants." A.R. at 16. In accordance with this residual functional capacity determination, the ALJ found that Wilson could perform her past relevant work as a data-entry clerk. The Appeals Council denied Wilson's request for review of the ALJ's decision, and the District Court affirmed the Commissioner's decision to deny benefits.

## II.

We review the Commissioner's factual findings to determine if they were based on substantial evidence. 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).[1]

## III.

Wilson argues to this court that the ALJ failed to properly consider an MRI taken on May 24, 2006. An earlier MRI (taken June 28, 2005) showed degenerative changes and disc bulge with mild spinal stenosis at the L4-L5 level and small central disc herniation at the L5-S1 level with degenerative changes. App'x at 24A. The May 24, 2006 MRI showed that disc dessication at the L4-L5 level was causing external pressure

---

[1] The District Court had jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3). We have jurisdiction under 28 U.S.C. § 1291.

over the thecal sac and right lateral nerve root and degeneration at the L2 level. This later MRI was not available to the State agency physicians who examined Wilson as part of her application for benefits, as those reports were produced in 2005. Wilson argues that this later MRI shows the significant worsening of her spinal problems over time, and that it was error for this medical evidence to not be reviewed by a medical expert.

Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available. 20 C.F.R. § 404.1527(f)(2)(i). Instead, an ALJ is required to obtain an updated report whenever "additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p. Wilson does not contend that this additional MRI provides evidence that her back impairments meet any impairment in the Listing of Impairments; she can only point to a generalized concern that the medical experts did not "have a complete evidentiary record." Appellant's Br. at 14. In this situation, the ALJ was not required to seek an updated report from the State consultants.

Moreover, the ALJ did consider the May 24, 2006 MRI, which is discussed in the section of the ALJ's opinion reviewing the medical evidence from Wilson's treating physicians. A.R. at 20-21. In particular, the ALJ discussed the medical evidence from

5

Wilson's visit in May 2006 to Saint Michael's Medical Center, which generated the MRI in question. A.R. 20-22. He specifically quoted from the discharge summary (A.R. at 138) and referred to the MRI. The ALJ properly took this medical evidence into account when making his decision.

Wilson also argues that the ALJ's finding that she was not credible was inadequate and gave "lip service to the requirement that the ALJ consider the testimony." Appellant's Br. at 18. The ALJ found that Wilson's "statements concerning her impairments and their impact on her ability to work are not entirely credible in light of discrepancies between [her] assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, the medical history, and the findings made on examination." A.R. at 21. The ALJ, having previously discussed Wilson's subjective complaints, then identified specific discrepancies between those complaints and the medical evidence. He noted that though she claimed back pain since 2000, she continued working till November 2002, when her company merged and she lost her job. He also noted that the record established that she walked with a normal unassisted gait, in contrast with her complaints about her problems walking. Additionally, he indicated that the record showed she had never been hospitalized for any orthopedic reason and had never taken any potent pain medication, though she claimed severely debilitating pain. The ALJ's credibility finding was fully explained and is supported by substantial evidence. *See, e.g.*, *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d

6

Cir. 1999) (holding that ALJ properly evaluated credibility where he "cited specific instances where [claimant's] complaints about pain and other subjective symptoms were inconsistent with" the objective medical evidence of record).

Wilson also contends, given her inability to bend, that the ALJ erred in his conclusion that she could perform her past relevant work as a data-entry clerk; however, as discussed above, the ALJ properly evaluated her impairments and subjective complaints in light of the objective medical evidence and her stated activities of daily living. His conclusion that she retained the residual functional capacity to perform the job requirements of a data-entry clerk is supported by substantial evidence.

The materials Wilson seeks to add to the record concern an additional application for disability benefits filed on August 29, 2008. Wilson asks the court to take into account the fact that even if the new application is resolved in her favor, the average amount of time from the date a claim is filed in the Newark office until the date of a hearing is 490 days. She urges the court to provide her relief in light of this lengthy delay and the progressive worsening of her impairments. Though we are sympathetic to the plight of claimants enduring lengthy delays involved in the processing of claims, this second application has no bearing on whether the ALJ's determination on the first application was supported by substantial evidence in the record, and the motion to supplement the record will be denied.

**IV.**

For the above-stated reasons, we will deny the motion to supplement the record and will affirm the Commissioner's decision.