NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1838
_____

WESTERN WORLD, INC.,
                                        Petitioner
v.

SECRETARY OF LABOR, United States
Department of Labor,
                                        Respondent

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission
(OSHRC No. 07-0144)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2015

Before:  SMITH, JORDAN, SLOVITER, *Circuit Judges*.

(Opinion filed: March 20, 2015)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SLOVITER, *Circuit Judge*.

Western World, Inc. ("WW") petitions for review of the decision of the Occupational Safety and Health Review Commission ("OSHRC") declining review of the Administrative Law Judge's ("ALJ") decision which upheld the finding of the Occupational Safety and Health Administration ("OSHA") that WW had violated the general duty clause in the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a)(1) (the "Act"). That violation is classified under the Act as "serious," 29 U.S.C. § 666(k). We will deny the petition for review.[1]

## I.

WW owned and operated Wild West City ("Park"), a theme park at which employees reenacted historic events from the Wild West, including gun fights. WW had a strict policy that no live ammunition was permitted inside the Park or in the automobiles of employees. WW provided blank ammunition for employees' use in advance of a performance and employees were also permitted to bring their own blank ammunition into the Park. Blank ammunition was freely distributed with few procedures accounting for its distribution. Employees would also occasionally trade firearms and ammunition with each other when needed for an upcoming performance.

In the reenactments, employees were permitted to use non-functioning prop guns, blank-firing guns, and firearms capable of firing live ammunition—but loaded with blank ammunition. Employees with valid firearms identity and purchase cards were permitted

---

[1] The ALJ and the OSHRC had jurisdiction pursuant to 29 U.S.C. §§ 659(c) and 661(j). We have jurisdiction under 29 U.S.C. § 660(a) to the extent WW petitioned the OSHRC for discretionary review.

to bring their own firearm capable of firing live ammunition. WW performed inspection of employee-owned firearms when they were initially brought to the Park, but performed no additional inspections of firearms or ammunition. New WW employees were required to complete a safety course.

On July 7, 2006, DaSean Sears, a WW employee, fired a live round during a performance and a bullet hit Scott Harris, another WW employee, in the head. Local police transported Harris to the hospital and referred the incident to OSHA which sent an inspector to the Park. After the shooting Mark Stabile, the president of WW, searched the employees' dressing room and discovered live ammunition in the gun case belonging to Al Morales.[2]

Three weeks later, WW fired Morales. In addition to the serious violation citation OSHA issued to WW for violating 29 U.S.C. § 654(a)(1), OSHA issued a $1,250 penalty. WW contested the violation and a hearing was held before the ALJ. The ALJ upheld the citation and penalty. WW filed a petition for discretionary review with the OSHRC, but the OSHRC declined to direct this case for review.[3] This petition followed.

II.

WW raises two arguments related to the ALJ's handling of two pretrial issues. First, WW contends that the ALJ erred by granting the Secretary of Labor's ("Secretary") motion *in limine* to exclude Sears' deposition testimony from a related civil action.

___

[2] Morales testified that during the 2006 season he brought live ammunition into the Park every day.
[3] Unless the OSHRC directs review of an ALJ's report, the report becomes the final order of the OSHRC within thirty days. 29 U.S.C. § 661(j).

Second, WW contends that the ALJ violated its right to due process by refusing to order the Secretary to provide it with an unredacted copy of OSHA's investigation report bearing the witnesses' names.

WW's petition to the OSHRC did not seek review of the ALJ's decision to grant the Secretary's motion *in limine*, nor the decision to not order the Secretary to provide WW with an unredacted copy of OSHA's investigative report.[4] "No objection that has not been urged before the [OSHRC] shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 660(a). A constitutional claim must be presented to the OSHRC in the first instance. *Bethlehem Steel Corp. v. Occupational Safety & Health Review Comm'n*, 607 F.2d 871, 875–76 (3d Cir. 1979) (interpreting 29 U.S.C. § 660(a)). Accordingly, because WW failed to raise these issues before the OSHRC in its petition for discretionary review, and there are no extraordinary circumstances excusing this failure, we lack jurisdiction to review these claims. 29 U.S.C. § 660(a).

### III.

WW also argues that the ALJ erred by failing to credit its affirmative defense of unpreventable employee misconduct. To prove the unpreventable employee misconduct defense in cases not involving supervisor misconduct, the employer must show that it "'[1)] has established workrules designed to prevent the violation[; 2)] has adequately

---

[4] WW's petition for discretionary review was not included in the appendix. We retrieved this document from the OSHRC, as "[p]arts of the record may be relied on by the court or the parties even though not included in the appendix." Fed. R. App. P. 30(a)(2); OSHRC Dkt. Num. 111. However, it is incumbent on the parties to include relevant documents in the appendix, as failure to do so results in a waste of judicial resources.

4

communicated these rules to its employees[; 3)] has taken steps to discover violations and[; 4)] has effectively enforced the rules when violations have been discovered.'" *Pa. Power & Light Co. v. Occupational Safety & Health Review Comm'n*, 737 F.2d 350, 358 (3d Cir. 1984) (emphasis omitted) (quoting *Marson Corp.*, 10 BNA OSHC 1660, *3 (No. 78–3491, 1982)).  An employer can be "held answerable for a violation resulting from [employee] misconduct . . . when demonstrably feasible measures existed for materially reducing" the incidence of misconduct but were not taken.  *Atl. & Gulf Stevedores, Inc. v. Occupational Safety and Health Review Comm'n*, 534 F.2d 541, 547 (3d Cir. 1976) (internal quotation marks omitted).

We need not address the first two prongs of the unpreventable employee misconduct affirmative defense because the ALJ found that WW satisfied the prongs and the parties do not dispute this finding.  However, the ALJ determined that WW had not satisfied the third and fourth prongs of this test because it had allowed employees to utilize their own firearms and ammunition (albeit blank) with only an inspection of the employee's firearm the first time he brought it into the Park.  The ALJ determined that WW had a responsibility to "audit those individuals to ensure compliance with the rules—the duty to inspect should be commensurate with the hazard presented by the conditions, which, in this case, was quite severe." App. at 32.  Additionally, the ALJ determined that WW had failed to address violations of the no live ammunition rule because there was no disciplinary policy in effect in case a violation of the rule was discovered and because there was insufficient evidence of discipline of violators of the

5

rule. For example, Morales, the employee who brought the live ammunition into the Park, was terminated, but not until three weeks later.

"The findings of the [OSHRC] with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

The ALJ's ruling was supported by substantial evidence. It is inexplicable that WW would allow employees to bring their own firearms and blank ammunition into the Park without inspection to ensure that these firearms were not loaded with live ammunition. Additionally, WW's safety parameters were woefully insufficient, as there was no safety officer assigned to inspecting firearms and ammunition on a regular basis, notwithstanding employees occasionally swapped firearms and ammunition with little regulation. WW did not take reasonable steps to discover violations of the no live ammunition rule. *Pa. Power & Light Co.*, 737 F.2d at 358. Moreover, the fact that it took three weeks to terminate Morales after WW management discovered that he brought live ammunition into the Park, in violation of its stated policy, demonstrates that WW did not effectively enforce its posted rules. *Id.* Accordingly, the ALJ's ruling that WW could not benefit from the affirmative defense is supported by substantial evidence.

6

IV.

Lastly, we turn to WW's arguments that the ALJ erred by determining that the presence of live ammunition and firearms capable of firing live ammunition presented a dangerous working condition and in assessing the risk of harm that these firearms and ammunition presented. We construe WW's arguments to assert the ALJ erred by finding that WW violated the general duty clause of 29 U.S.C. § 654(a)(1), specifically, the first and third prong of the general duty clause test.

The general duty clause requires an employer to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a)(1). To prove a violation of the general duty clause

> the Secretary must establish that: (1) a condition or activity in the employer's workplace presented a hazard to employees; (2) the cited employer or the employer's industry recognized the hazard; (3) the hazard was causing or likely to cause death or serious physical harm; and (4) feasible means existed to eliminate or materially reduce the hazard.

*The Timken Co.*, 20 BNA OSHC 1070, *2 n.5 (No. 97–970, 2003); *see also Babcock & Wilcox Co. v. Occupational Safety & Health Review Comm'n*, 622 F.2d 1160, 1164 (3d Cir. 1980) (recognizing this standard).

The ALJ determined that WW's employees were exposed to a hazardous working environment because WW permitted employees to utilize their own firearms capable of firing live ammunition and an employee brought live ammunition into the Park, WW performed no ongoing inspections of the employees' firearms and ammunition, and

7

Harris was in fact shot in the head. Additionally, the ALJ determined that the hazard—being struck by a live bullet—was likely to cause death or serious harm, and in this case, did in fact cause serious harm.[5] A review of the record reveals that the ALJ's ruling is supported by substantial evidence.

V.

For the reasons set forth, we deny the petition for review.

---

[5] WW estimates that in the forty-three years that Wild West City has been open approximately 580,500 rounds of ammunition have been fired by performers, resulting in a 0.00017% chance for an employee to be struck by a live bullet. A serious violation of the general duty clause occurs when there "is a substantial probability that death or serious physical harm could result from a condition which exists." 29 U.S.C. § 666(k). The probability language of § 666(k) refers to the probability of death or serious injury, not to the probability of an accident. *Sec'y of Labor v. Trinity Indus., Inc.*, 504 F.3d 397, 401 (3d Cir. 2007).