OPINION
DuBOIS, District Judge.
Jennifer Garibay appeals from a District Court order affirming the Commissioner of Social Security’s denial of Disability Insurance Benefits (“DIB”) and Supplemental Security Income Benefits (“SSI”) under the Social Security Act (“SSA”), for the period beginning on July 27, 2003 and continuing through September 28, 2006. Garibay argues that the decision of the Administrative Law Judge (“ALJ”) is not supported by substantial evidence. We disagree and will affirm the judgment of the District Court.
I.
Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.
Garibay applied for SSI Benefits on January 15, 2004 and for DIB on February 13, 2004. (Administrative Record (“R.”) 77-79, 281-83.) At the time of her applications, she was twenty-nine years old and alleged disability due to degenerative disc disease, arthritis, joint pain, and depression. Her medical history included injuries resulting from two automobile accidents, one on September 27, 2002 and one on June 14, 2004. (R. 196, 216.) Almost one year after the first accident, on July 28, 2003 and on August 5, 2003, Garibay was treated in the emergency room of St. Peter’s Hospital for back pain. (R. 151— 56, 163-68.) X-rays at that hospital showed no radiographic abnormalities, and Garibay was prescribed narcotic pain medication. (R. 157-62, 170-72.) On June 14, 2004, immediately following the second accident, Garibay was treated for facial pain caused by hitting her head on the steering wheel. (R. 183-94.) According to the medical records, from August 2003 to December 2004, Mark Friedman, M.D., treated Garibay for lumbar radiculopathy, degenerative disc disease, cervical radiculitis, and sprain and strain to the lumbar and the cervical spine. (R. 196-243.) To address Garibay’s complaints of pain and discomfort, Dr. Friedman prescribed pain medication, muscle spasm relief medication, and physical therapy. (R. 196-243.) Garibay also met with Pradip Gupta, M.D., for a psychiatric examination on May 6, 2006. (R. 263-65.) Dr. Gupta diagnosed her with, inter alia, chronic depressive reaction and a history of chronic alcohol abuse and polysubstance drug abuse and assigned her a Global Assessment of Functioning score of fifty. (R. 265.) In Dr. Gupta’s opinion, these mental impairments did not impose any limitations on her ability to do work-related activities. (R. 266-68.)
On August 8, 2003, Garibay was terminated from her most recent job — a secretary at a chiropractic office. (R. 85, 329-30.) At the hearing before the ALJ, Gari-bay testified that she informed her employer that her doctor was planning to put her on disability, and he responded by firing her. (R. 329-30.) According to Garibay, her employer then sent her a letter stating that she was terminated for *154 calling him and having an outburst on the telephone. (R. 330.) Garibay disputed this account, stating that she had not even called her employer on the day in question. (R. 330.) According to the record, Garibay has not worked since her termination from the chiropractor’s office.
Garibay’s applications for SSI and DIB were denied initially and on reconsideration. (R. 31-32, 39-42, 291-95.) Pursuant to Garibay’s request, a hearing was held before ALJ Denis O’Leary on March 22, 2006. (R. 296-331.) Following the hearing, ALJ O’Leary issued a written opinion on September 28, 2006 finding that Gari-bay was not disabled for purposes of the SSA. (R. 22-28.) Garibay requested review of the ALJ’s decision by the Appeals Council on October 3, 2006. (R. 18.) The Appeals Council denied her request on February 23, 2007, making the decision of the ALJ the final decision of the Commissioner of Social Security (“Commissioner”). (R. 5-7.)
On April 20, 2007, Garibay filed a Complaint in the District Court of New Jersey, seeking review of the Commissioner’s denial of benefits. On August 4, 2008, the Honorable Stanley R. Chesler issued an Opinion affirming the Commissioner’s decision on the ground that it was supported by substantial evidence. (App.1-21.) Gar-ibay timely filed a Notice of Appeal on September 29, 2008. (App.34.)
II.
The District Court had subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and we have jurisdiction to review the District Court’s decision under 28 U.S.C. § 1291. We review the ALJ’s application of law de novo and the ALJ’s factual findings for substantial evidence. Poulos v. Comm’r of Soc. Sec., 474 F.3d 88, 91 (3d Cir.2007). “Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.2003) (citations & internal quotation marks omitted).
III.
The Social Security Act (“SSA”) authorizes the Commissioner to pay benefits to individuals with disabilities. 42 U.S.C. §§ 423(b), 1382. The SSA defines “disability” as the inability to engage “in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.” Id. § 1382c(a)(3)(A). Regulations prescribe a five-step sequential process for evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520. We have described this process as follows:
In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § [4041.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are “severe”, she is ineligible for disability benefits.
In step three, the Commissioner compares the medical evidence of the claimant’s impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its *155 equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir.1994).
If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant’s impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.
Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir.1999).
In this case, at step one, the ALJ determined that Garibay had not engaged in substantial gainful activity since July 27, 2003, the alleged onset date of her disability. (R. 24.) At step two, the ALJ determined that Garibay was suffering from a severe combination of impairments: back disorder and depression. (R. 24.) At step three, the ALJ determined that Garibay’s impairments, both alone and in combination, did not meet or medically equal one of the listed impairments presumed severe enough to preclude any gainful employment. (R. 26.) The ALJ focused on Listings 1.00 (Musculoskeletal System) and 12.00 (Mental Disorder). (R. 26.) The ALJ next determined that Garibay had the residual functional capacity (“RFC”) to perform sedentary work; specifically she could lift and/or carry a maximum of ten pounds, stand and/or walk two hours in an eight-hour workday, and sit up to six hours in an eight-hour workday. (R. 26-27.) At step four, the ALJ compared the RFC determination to Garibay’s past relevant work and determined that she was capable of performing her past relevant work as a secretary, both as actually and as generally performed. (R. 27-28.) Based on this step four determination, the ALJ concluded that Garibay was not disabled for the relevant period and did not proceed to step five. (R. 28.)
IV.
On appeal, Garibay argues that the decision of the ALJ is not supported by substantial evidence. Specifically, she challenges the ALJ’s determination of her RFC, the ALJ’s evaluation of her subjective complaints of pain, and the ALJ’s finding at step four that she has the RFC to perform her past relevant work as a secretary.
A. Determination of Residual Functional Capacity
Garibay argues that the ALJ did not provide an adequate evidentiary foundation to support his determination of Garibay’s residual functional capacity (“RFC”). The ALJ ultimately determined the following:
After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/[or] carry a maximum of 10 pounds; stand and/or walk 2 hours in an 8 hour workday and sit up to 6 hour[s] in an 8 hour workday. In *156 making this finding, the undersigned considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. ... The undersigned also considered opinion evidence....
(R. 26-27.) This determination was consistent with the Physical Residual Functional Capacity Assessment and the Medical Source Statement of Ability to Do Work-jRelated Activities (Physical) completed !by medical consultants. (R. 173-80, 274-77.)
In making an RFC determination, an ALJ must discuss both the evidence that supports his conclusion and the evidence that was rejected. Burnett v. Comm’r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir.2000); Cotter v. Harris, 642 F.2d 700, 705—07[ (3d Cir.1981). The ALJ did so here. In this case, to make his RFC determination, the ALJ considered all of the evidence before him, both the objective medical evidence and Garibay’s own account of her limitations. (R. 24-27.) Comparing the objective evidence with Garibay’s subjective complaints of disabling pain, he found that her “statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.” (R. 27.) In keeping with the requirements of Cotter, the ALJ delineated the medical and other objective evidence in the record that supported his determination that Garibay was capable of sedentary work. Such evidence included: the opinion of the consultive examiner, who stated that Garibay could perform sedentary work; MRIs, which described her back pain as “mild”; her decision to stop physical therapy; her daily activities, including care of her young children; her ability to drive; her enjoyment of reading, which suggested that she was able to concentrate and focus; and her doctor’s statement that her pain was well managed with medication.[1] (R. 27.)
Moreover, the ALJ identified the evidence that contradicted his RFC determination and explained his reasons for rejecting such evidence. He accorded less weight to the psychiatric opinion of Dr. Gupta, which stated that Garibay’s mental impairments imposed no limitations on her work performance. After considering the entire record, including Garibay’s problematic work history, the ALJ disagreed with Dr. Gupta’s assessment and concluded that Garibay “does have slight limitations in her ability to respond appropriately” in a work setting.[2] (R. 27.)
*157 As the ALJ detailed both the evidence supporting his RFC determination and his reason for rejecting contrary evidence, his decision was “accompanied by a clear and satisfactory explication of the basis on which it rests.” Cotter, 642 F.2d at 704. Accordingly, the ALJ’s explanation of his RFC determination complied with the requirements of Cotter and Burnett.
B. Evaluation of Subjective Complaints of Pain
Garibay contends that the ALJ failed to properly evaluate her subjective complaints of pain. Pursuant to the Commissioner’s regulations, “[ajllegations of pain and other subjective symptoms must be supported by objective medical evidence.” Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999) (citing 20 C.F.R. § 404.1529). In this circuit, “while there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself.” Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984). Once an ALJ determines that objective medical evidence supports a claimant’s complaints of pain, “the complaints should then be given ‘great weight’ and may not be disregarded unless there exists contrary medical evidence.” Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir.1993). The ALJ “must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual’s ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.” Hartranft, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c)).
In this case, after reviewing the evidence, the ALJ found that Garibay’s “medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Garibay’s] statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.” (R. 27.) The ALJ considered Garibay’s efforts to alleviate the pain (including her cessation of physical therapy), the objective medical evidence (including a report by Garibay’s treating physician that her pain is controlled by medication), and Garibay’s daily activities. (R. 27.) The ALJ concluded that the evidence was inconsistent with Garibay’s complaints of disabling pain. An ALJ may reject subjective complaints of pain if he does not find them credible, but he “must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding.” Schaudeck v. Comm’r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir.1999) (citing Cotter, 642 F.2d at 705-06) (further citation omitted). The ALJ’s explanation of his rejection of Gari-bay’s complaints of disabling pain complied with this standard.
In reaching his conclusion, the ALJ correctly compared Garibay’s subjective complaints of pain with her medical records, as required by Social Security regulations and this circuit’s precedent. Having reviewed the evidence of record, we conclude that his reasoning and determination were based on substantial evidence.
C. Determination of Past Relevant Work
Garibay contends that at step four, the ALJ failed to compare her RFC to specific job requirements in concluding that she could perform her past relevant *158 work as a secretary. At Step 4, the ALJ must consider whether the claimant retains the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Step four involves three substeps:
(1) the ALJ must make specific findings of fact as to the claimant’s residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant’s past work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.
Burnett v. Comm’r of Soc. Sec., 220 F.3d 112, 120 (3d Cir.2000).
Social Security Regulation (“S.S.R.”) 82-62 sets forth the evidence that an ALJ should consider in making this determination:
The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant’s ability to do [past relevant work] requires a careful appraisal of (1) the individual’s statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.
Evaluating this evidence, the ALJ should determine whether “the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it” or whether “the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.” S.S.R. 82-61. In the latter inquiry, the ALJ may rely on job descriptions found in the Dictionary of Occupational Titles (“DOT”). Id. “[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be ‘not disabled.’” Id.
In this case, the ALJ found that Gari-bay has the RFC to do sedentary work. (R. 27.) In particular, he determined that Garibay “has the residual functional capacity to lift and/[or] carry a maximum of 10 pounds; stand and/or walk 2 hours in an 8 hour workday and sit up to 6 hour[s] in an 8 hour workday.” (R. 26.) This determination squares with the regulations, which define sedentary work as “involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.” 20 C.F.R. §§ 404.1567, 416.967; see also S.S.R. 83-10. “Since being on one’s feet is required ‘occasionally’ at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.” S.S.R. 83-10. The ALJ’s RFC de *159 termination also was consistent with the Physical Residual Functional Capacity Assessment and the Medical Source Statement of Ability to Do Work-Related Activities (Physical) completed by medical consultants. (R. 173-80, 274-77.) In determining Garibay’s RFC, the ALJ made “specific findings of fact,” as required by substep one of Burnett, 220 F.3d at 120.
The ALJ next found that “claimant is capable of performing past relevant work as a secretary.... In comparing the claimant’s residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.” (R. 27-28.) Based on a review of the record, we disagree that Gari-bay is able to perform her past relevant work as a secretary as actually performed. We agree, however, that substantial evidence in the record supports the ALJ’s finding that Garibay has the RFC to perform the work of a secretary as it is generally performed. Accordingly, we will affirm.
Garibay’s testimony and the forms that Garibay completed were the primary sources of information on the requirements of her past relevant work as a secretary in a chiropractor’s office. In a Work History Report dated March 25, 2004, Garibay described her secretarial job as including typing, answering phones, word processing, scheduling, filing, copying, faxing, and minor accounting. (R. 86.) She also stated that she cleaned the office, which involved carrying items weighing twenty to thirty pounds. (R. 86.) When testifying before the ALJ on March 22, 2006, she described her work as follows: “I would get there prior to the doctors, get their rooms ready and set and then begin making phone calls to patients whether they need to cancel, schedule, filing, copying. I’d fix the copy machine from time to time.” (R. 305-06.) Garibay testified that this work kept her on her feet for most of the day. (R. 306.) Her secretarial responsibilities also involved lifting file boxes that, according to Garibay, weighed between thirty-five and fifty pounds. (R. 307.) Garibay also explained that her cleaning duties were in addition to her secretarial duties and that she took on the task of cleaning the office to make additional money. (R. 306.)
Garibay’s uncontroverted description of her past relevant work, as actually performed, is inconsistent with the regulatory definition of sedentary work. Sedentary work, as defined in the regulations, involves lifting no more than ten pounds. 20 C.F.R. §§ 404.1567, 416.967. The ALJ likewise explicitly found that Garibay was capable of lifting a maximum of ten pounds. (R. 26.) Garibay’s secretarial job, however, entailed lifting file boxes weighing thirty-five to fifty pounds. (R. 307.) Moreover, sedentary jobs, as described by the regulations, should generally require no more than two hours of standing or walking in an eight-hour workday. S.S.R. 83-10. The ALJ found that Garibay was capable of meeting this requirement. (R. 26.) Garibay, however, testified that her work involved being on her feet “[m]ost of the day because [she] barely sat down.” (R. 306.) In short, Garibay’s secretarial job, as she actually performed it, did not fit the description of sedentary work or the ALJ’s RFC determination. Thus, the ALJ’s conclusion that Garibay was able to perform her past relevant work as it was actually performed is not supported by substantial evidence.
The ALJ also determined that Garibay was able to do the work of a secretary as generally performed. That finding is supported by substantial evidence. Pursuant to S.S.R. 82-61, if a claimant “cannot perform the excessive functional demands *160 and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be ‘not disabled.’ ” To determine “the functional demands and job duties of the job as ordinarily required by employers throughout the national economy,” an ALJ may rely on the Dictionary of Occupational Titles (“DOT”).[3] Id. The DOT definition of a secretary is as follows:
Schedules appointments, gives information to callers, takes dictation, and otherwise relieves officials of clerical work and minor administrative and business detail: Reads and routes incoming mail. Locates and attaches appropriate file to correspondence to be answered by employer. Takes dictation in shorthand or by machine ... and transcribes notes on typewriter, or transcribes from voice recordings.... Composes and types routine correspondence. Files correspondence and other records. Answers telephone and gives information to callers or routes call to appropriate official and places outgoing calls. Schedules appointments for employer. Greets visitors, ascertains nature of business, and conducts visitors to employer or appropriate person. May not take dictation. May arrange travel schedule and reservations. May compile and type statistical reports. May oversee clerical workers. May keep personnel records.... May record minutes of staff meetings. May make copies of correspondence or other printed matter, using copying or duplicating machine. May prepare outgoing mail, using postage-metering machine. May prepare notes, correspondence, and reports, using word processor or computer terminal.
DOT 201.362-030.
The DOT description of the work of a secretary falls within the regulatory definition of sedentary work. Moreover, it is compatible with the ALJ’s RFC determination, which is supported by substantial evidence. Thus, Garibay is capable of performing secretarial work as it is “generally required by employers throughout the economy.” S.S.R. 82-61. For that reason, we find that the ALJ’s decision that Gari-bay is not disabled is supported by substantial evidence and will affirm.
V.
For all of the foregoing reasons, we conclude that substantial evidence exists to support the Commissioner’s denial of disability insurance benefits. We thus will affirm the order of the District Court.

. In this section of the opinion, the ALJ writes that he also doubts Garibay’s credibility be-causé "[s]he has been on morphine and oxico-tin [sic ] in amounts totally out of sync for the nature of the impairment. The claimant is suggesting at the hearing that the pain management doctor is keeping her from getting treatment but the record, as well as logic suggests that she went there for the drugs and it was her that was resisting treatment.” (R. 27.) Garibay argues that this statement, unsupported in the record, demonstrates bias on the part of the ALJ.
While Dr. Gupta did diagnose Garibay with a history of substance abuse, the evidentiary record does not support a conclusion that Garibay was then abusing pain medication. As only the ALJ had an opportunity to observe Garibay and evaluate her demeanor, his credibility assessments are entitled to great weight. We do not find that the ALJ’s statements demonstrate bias such that remand for a hearing before a different ALJ would be required. Contra Ventura v. Shalala, 55 F.3d 900, 904-05 (3d Cir.1995).

. As an additional reason that the ALJ's decision was not supported by substantial evidence, Garibay argues that the ALJ rejected the only psychiatric evidence in the record— the report of Dr. Gupta. Dr. Gupta did diagnose Garibay with mental impairments, but he concluded that these impairments did not impose any work-related limitations. (R. 265-68.) In fact, the ALJ found that Gari-bay’s mental impairments cause “slight limi *157 tations in her ability to respond appropriately” in a work setting. (R. 27.) Thus, any disagreement that the ALJ had with Dr. Gupta's report did not prejudice Garibay as his findings were more favorable to her than the opinions of Dr. Gupta.

. We note that the ALJ did not explicitly compare Garibay’s RFC and the DOT definition of a secretary on the record. While the duties of certain jobs, such as a secretary, may seem to be matters of common knowledge, Burnett requires such a comparison. See 220 F.3d at 120. Neglecting to expressly perform this comparison in the written opinion renders appellate review more difficult but does not warrant remand under the circumstances of this case.