7 F.3d 196
 Michael R. VALLONE, Plaintiff-Appellee,
v.
Earl D. LEE, Individually and in his capacity as Sheriff of
Douglas County, Georgia; Jeff D. Andrews, Individually and
in his capacity as Agent, Servant and Employee of the
Douglas County Sheriff's Office; Bob G. Starrett,
Individually and in his capacity as Agent, Servant and
Employee of the Douglas County Sheriff's Office; Gary
Fields, Officer, Individually and in his capacity as Agent,
Servant and Employee of the Douglas County Sheriff's Office;
Carl Smothers, Individually and in his capacity as Agent,
Servant and Employee of the AAA Bonding Company and AAA
Bonding Company for Douglas County, Defendants-Appellants.
 No. 91-8716.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 10, 1993.
 
 Theodore Freeman, Philip W. Savrin, Atlanta, GA, and Donald B. Howe, Jr., Howe & Dettmering, Douglasville, GA, for appellants.
 Dennis J. Webb, and Robert A. Burnett, Webb, Carlock, Copeland, Semler & Stair, Atlanta, GA, for appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT, Chief Judge, ANDERSON, Circuit Judge, and ALAIMO*, Senior District Judge.
 PER CURIAM:
 
 
 1
 This case questions the validity of an agreement releasing certain public officials from civil liability arising from the arrest and pre-trial confinement of appellee, Michael R. Vallone. Vallone was arrested on three misdemeanor charges and, because he could not make bail, was placed in jail pending trial. Vallone remained in jail until, almost seven months later, he signed a document purporting to release the officials from any liability arising from the arrest. Claiming that he had not signed the agreement voluntarily, Vallone brought suit under 42 U.S.C. § 1983 (1988). The district court permitted the case to proceed to the jury on the voluntariness of the agreement and the defendants' liability, and the jury returned a general verdict for Vallone. We affirm.
 
 I.
 A.
 
 2
 On June 20, 1986, an officer in the Douglas County Sheriff's Department obtained a warrant for the arrest of appellee, Michael R. Vallone, for "Giving a False Name to a Law Enforcement Officer" and "Theft by Taking." Three days later, the officer arrested Vallone on these charges. At his arraignment, bond was set at $2,000 and Vallone indicated that he would not require appointed counsel. A second arrest warrant was issued on June 26, 1986, for uttering a bad check. Bond was set at $1,000. Because Vallone could not make bail, he remained in the county jail.
 
 
 3
 Vallone testified that, beginning approximately one week after he was incarcerated, he repeatedly sought bail through the only local bail bondsman and sought court-appointed counsel through the procedures established at the county jail.[1] He continued these efforts, to no avail, for the next seven months. (At trial, Vallone presented evidence that his efforts to make bail and to obtain counsel had been obstructed by the Sheriff of Douglas County, Georgia, Earl D. Lee.) Vallone then filed a federal habeas petition against Lee and others, in an attempt to gain his release. Shortly thereafter, a state court appointed Leonard Queen to represent Vallone.
 
 
 4
 Queen apparently acted merely as an intermediary between Vallone and the Assistant District Attorney, John Garcia. The day after his appointment, Queen delivered to Vallone a release agreement that had been prepared by Garcia. Vallone refused to sign. Upon learning of Vallone's refusal, Garcia instructed Queen to "advise Mr. Vallone that he either signs [the release] the way it is, or else." Vallone testified that Lee ordered him to sign the release, stating "Boy, who do you think has the keys to this building?" Id. at 363. According to Vallone's testimony, he eventually signed the agreement under protest in order to secure his freedom.[2]
 
 
 5
 Once released, Vallone brought this action under 42 U.S.C. § 1983 (1988), claiming that Lee and others had violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. During the course of the trial, the court dismissed the claims against all of Lee's co-defendants. At the close of all the evidence, the court denied Lee's motion for a directed verdict.
 
 B.
 
 6
 The court instructed the jury on two theories of liability: (1) that Lee violated Vallone's right to due process by inhibiting his access to bail, and (2) that Lee violated Vallone's right of access to the courts through a court-appointed attorney. The court also instructed the jury, over Lee's objection, to determine the validity of the release agreement. The jury returned a general verdict for Vallone, and awarded $100,000 in compensatory damages and $100,000 in punitive damages. Lee appeals, arguing that the district court erred in its jury instruction on the validity of the release agreement.[3]
 
 II.
 
 7
 We must determine whether the court's jury instructions on the voluntariness of the release agreement show any "tendency to confuse or to mislead the jury with respect to the applicable principles of law." Mosher v. Speedstar Div. of AMCA Int'l, Inc., 979 F.2d 823, 824 (11th Cir.1992) (quoting Rohner, Gehrig & Co. v. Capital City Bank, 655 F.2d 571, 580 (5th Cir. Unit B, 1981)). "We will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial." Id.; see also National Indep. Theatre Exhibitors, Inc. v. Charter Fin. Group, Inc., 747 F.2d 1396, 1402-03 (11th Cir.1984); McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504, 1509 (11th Cir.1990).
 
 
 8
 Lee relies on Town of Newton v. Rumery, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), to challenge the validity of the court's charge. Rumery, however, does not control the instant case. Rumery involved an informed and uncoerced decision by a criminal defendant to forego civil litigation in exchange for the dismissal of charges pending against him.[4] Consequently, the Court focused on Rumery's public policy objections to release-dismissal agreements.[5] In the instant case, however, Vallone presented evidence that not only had he been coerced into signing the agreement, but also that the coercion stemmed from the threat of continuing and unjustified incarceration pending his trial.
 
 
 9
 In its final jury charge,[6] the district court properly advised the jury that "the defendant must prove ... that ... the plaintiff executed the agreement voluntarily, knowingly, and free of duress." The court also charged the jury that "if the true exchange for the signing of the release was to permit Mr. Vallone to get out of jail, and if Mr. Vallone were otherwise entitled to get out of jail, then the signing of the release would not be voluntary." Here, the court properly stated that if Vallone was otherwise entitled to be released on bail--though Lee had blocked his release--then, by signing the agreement to secure his freedom, Vallone did not voluntarily relinquish his right to seek redress against Lee in a subsequent civil suit.[7] See Hall v. Ochs, 817 F.2d 920, 923 (1st Cir.1987) (In such circumstances, even if probable cause supports the charges, "confining [a criminal defendant] solely because he want[s] to exercise his right to seek civil redress violate[s] his right to liberty."). While not a complete exposition of Rumery 's test, the instruction, taken as a whole and within the context of the evidence presented at trial, did not tend to confuse or mislead the jury.
 
 III.
 
 10
 While Rumery clarified that not all release-dismissal agreements are void, we must not forget that "[t]he coercive power of criminal process may be twisted to serve the end of suppressing complaints against official abuse, to the detriment not only of the victim of such abuse, but also of society as a whole." Rumery, 480 U.S. at 400, 107 S.Ct. at 1196 (O'Connor, J., concurring). Vallone presented sufficient evidence of such abuse to justify the district court's submission to the jury the question whether Vallone voluntarily assented to the agreement. The court's instruction did not tend to confuse or mislead the jury.
 
 
 11
 AFFIRMED.
 
 
 
 *
 Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation
 
 
 [1]
 Vallone testified that he filled out 40 to 50 forms requesting appointed counsel, but that he did not provide the financial information requested in the form because he did not have accurate information. Lee suggests that because Vallone did not properly fill out the forms, the Sheriff's Office did not have a duty to act upon them. In any event, the evidence at trial permits the inference that Lee circumvented the jail's standard procedures to ensure that Vallone would not obtain counsel
 
 
 [2]
 The release provides, in relevant part:
 I, Michael Vallone, the undersigned, for good and valuable consideration, do hereby release and forever discharge Earl D. Lee ... from all claims, demands and liabilities to me on account of any and all occurrences up to and including the date of this instrument, and including, without limiting the generality of the foregoing, all claims, demands and liabilities to me which may have been caused [by reason of the charges against me]; and I warrant that no promises or inducements other than that explicitly stated above has been offered to obtain my execution of this release; that this release is executed without reliance upon any statement or representation concerning the nature and extent of any damages to me or legal liability therefore of the persons released; and that I am legal age and competent to execute this release.
 
 
 [3]
 Lee also challenges the district court's admission of certain evidence, and the district court's determination that the evidence was sufficient to support the general verdict. We affirm the district court on these issues
 
 
 [4]
 In Rumery, the Supreme Court reviewed the enforceability of "release-dismissal" agreements--agreements through which a criminal defendant releases claims under 42 U.S.C. § 1983 in exchange for the dismissal of pending criminal charges. Rumery had been arrested for witness tampering arising from an alleged threat made to the victim of a sexual assault. His counsel negotiated a deal in which the state dismissed the charges against him in exchange for his covenant not to sue the town, its officials, or the victim for any claims arising from the arrest. The prosecutor testified that he entered into the agreement to protect the victim from the trauma she would suffer if she were forced to testify in Rumery's trial. Rumery's counsel informed Rumery of the nature of the agreement and, three days later, Rumery signed it. Nevertheless, ten months later Rumery filed suit under 42 U.S.C. § 1983 against the town and its officials. The district court enforced the agreement and dismissed the case. The court of appeals, finding release-dismissal agreements to be void ab initio as against public policy, reversed. Rumery v. Town of Newton, 778 F.2d 66, 67 (1st Cir.1985)
 The Rumery Court held that a release-dismissal agreement is valid if the defendant entered into it voluntarily, without prosecutorial misconduct, and as long as the agreement does not adversely affect the public interest. Rumery, 480 U.S. at 398, 107 S.Ct. at 1195.
 
 
 [5]
 As to voluntariness, the Supreme Court considered Rumery's sophistication as a businessman, that he was not in jail, that he was represented by experienced counsel, that his counsel drafted the agreement, and that Rumery deliberated on the decision for three days. Additionally, implicit in its reasoning, the Court assumed that the case against Rumery had sufficient merit to justify proceeding to trial should Rumery refuse to sign the agreement. The Court found the agreement in Rumery valid and enforceable because of "Rumery's considered decision that he would benefit personally from the agreement," 480 U.S. at 395, 107 S.Ct. at 1193, and that under the allegations presented, the public interest and prosecutorial interests favored enforcement of the agreement. Id. at 396, 107 S.Ct. at 1194
 
 
 [6]
 The court actually charged the jury twice, recharging the jury after sustaining an objection to the original charge
 
 
 [7]
 Lee argues that this instruction relates to Rumery 's prosecutorial misconduct prong rather than the voluntariness prong, and, since only the voluntariness prong raised an issue of fact, the instruction was improperly submitted to the jury. Actually, the instruction addresses whether the agreement failed because Vallone did not receive consideration for his promise; that is, the prosecutor simply agreed to perform a duty to which the state was already bound--to ensure access to bail and counsel. Rather than requiring the weighing of policy concerns, which are questions of law, this issue raises factual questions properly tried to the jury