**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3901
_____

JOHN DAVID MINCH,
                                        Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 1-15-cv-00303)
District Judge:  Honorable Donetta W. Ambrose
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2017
Before:  GREENAWAY, JR., GREENBERG and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 15, 2017)
_____

OPINION[*]
_____

PER CURIAM

John David Minch appeals pro se from an order of the United States District Court

for the Western District of Pennsylvania denying his motion for summary judgment and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

granting the Commissioner of Social Security's (Commissioner) motion for summary judgment in an action seeking disability insurance benefits (DIB) and supplemental security income (SSI). We will affirm.

In January 2008, Minch filed an application for benefits based on lower back disc problems and mental health conditions. Based on the evidence in the record, and the report of an independent physician, Dr. Gabriel Sella, the Social Security Administration denied Minch's claim initially and on reconsideration. Minch requested a hearing, which an Administrative Law Judge (ALJ) conducted in July 2010.[1] The ALJ concluded that Minch was not disabled. After the Appeals Counsel denied Minch's request for review, he filed a complaint in the District Court. The District Court remanded the matter "[i]n an abundance of caution" because Dr. Sella's report stated that Minch should undergo "further [medical] investigation with regards to his low back pain."

On remand, the ALJ collected additional medical records, questioned Minch about the medical treatment he had received, and heard testimony from an independent vocational expert. Then, applying the five-step, sequential analysis for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, the ALJ concluded that (1) Minch was not engaged in substantial gainful activity since the alleged onset date, November 2, 2005; (2) Minch's disc disease and depression, among other conditions, were severe

---

[1] At that time, Minch was awaiting trial on charges of murdering his ex-wife. He was convicted in November 2015, and is now serving a life sentence. We note that a claimant is not eligible for SSI benefits for any month during which he is an inmate of a public institution. See 42 U.S.C. § 1382(e)(1)(A). Similarly, a claimant cannot collect DIB payments for any month during which he is incarcerated "pursuant to his conviction of a criminal offense." 42 U.S.C. § 402(x)(1)(A)(i).

impairments; (3) Minch did not have an impairment or combination of impairments that was the same or equivalent to an impairment listed by the Social Security Administration as presumptively precluding any gainful activity; (4) Minch was unable to perform his past relevant work as a pizza delivery driver and janitor; and (5) Minch possessed sufficient residual functional capacity to perform light work. Consequently, the ALJ concluded that Minch was not disabled. The Appeals Counsel again denied Minch's request for review.

Minch next filed a civil action in the District Court, naming the Commissioner as the defendant. The parties filed cross motions for summary judgment. The District Court denied Minch's motion and granted the Commissioner's motion, concluding that the ALJ's decision was supported by substantial evidence. In particular, the District Court held that the ALJ conducted adequate further investigation and adequately explained the reasons for the weight afforded to the medical opinions. Minch appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. "The role of this Court is identical to that of the District Court, namely to determine whether there is substantial evidence to support the Commissioner's decision." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); 42 U.S.C. § 405(g). Substantial evidence is "'more than a mere scintilla,'" and is defined as "'such relevant evidence as a reasonable mind might accept as adequate.'" Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

3

To qualify for disability benefits, "a claimant must demonstrate [that] there is some 'medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period.'" Plummer, 186 F.3d at 427 (quoting Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)). A claimant is unable to engage in any substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at 427-28 (quotation marks omitted).

In determining whether a claimant is disabled, the Commissioner considers "all … symptoms, including pain, and the extent to which [these] symptoms can reasonably be accepted as consistent with objective medical evidence …." 20 C.F.R. §§ 404.1529(a), 416.929(a). When evaluating subjective complaints of disabling symptoms, the ALJ must assess the persistence and intensity of the claimant's pain as well as the extent to which it impairs his ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Allegations of disabling symptoms must be consistent with objective medical evidence, and the ALJ must explain why any allegations were rejected. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).

Minch argues that the ALJ did not properly evaluate his subjective complaints.[2] In particular, he alleges that substantial evidence does not support the ALJ's

---

[2] In making this argument, Minch asserts that the "ALJ's findings regarding the intensity, or degree, of pain [are] absolutely irrelevant." In support of this position, Minch relies on

4

determination that his complaints about his physical impairments were contradicted by objective medical evidence. Minch claimed that he experienced constant pain. The ALJ noted, however, that Minch's "treatment has been minimal and inconsistent." Between the onset date and his incarceration in 2009, Minch was examined for physical ailments only in October 2007, March 2008, and September 2008. Based on the reports from those examinations, the ALJ concluded that the record indicated "generally normal physical examination findings."[3] In addition, the ALJ relied on Minch's acknowledgement that various medications were successfully treating his neuropathic pain and diabetes. Furthermore, the ALJ credited the opinion of the state agency medical consultant, Dr. Atiya Lateef, which was affirmed by another doctor at the reconsideration level of administrative review. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (noting that "[s]tate agent opinions merit significant consideration."). Dr. Lateef examined the medical record and concluded that Minch could perform a range of

---

Garrison v. Colvin, where the Ninth Circuit explained that, under its "credit-as-true" rule, a court may credit evidence as true and remand for an immediate award of benefits when, inter alia, the ALJ has failed to provide legally sufficient reasons for rejecting evidence. 759 F.3d 995, 1019-21 (9th Cir. 2014). We decline to apply that rule here.

[3] The 2007 examination report indicated "muscular skeletal normal appearance from lumbar" and negative results from straight leg raises and deep tendon reflexes. Minch was prescribed Ibuprofen. In March 2008, Minch was examined by Dr. Sella in connection with his benefits application. Dr. Sella reported that the "clinical examination … was entirely negative," noting that Minch "walked in and out of the room without difficulty" and "got on and off the table without difficulty." Dr. Sella also stated that Minch was able to squat, hop, and perform a tandem walk, as well as a toe and heal walk. Additional testing in September 2008, including an EMG and MRI, revealed "multilevel degenerative disc changes with [mild] diffuse bulging discs. No focal disc herniation or spinal stenosis."

light work with limited exposure to extreme cold, vibration, and hazards. The ALJ afforded "great weight" to Dr. Lateef's opinion because it was "generally consistent with the evidence of record, including the MRI and EMG findings, the physical examination findings showing a full range of motion of [Minch's] back and full strength of his lower extremities, and his conservative treatment." Under these circumstances, we conclude that substantial evidence supports the ALJ's ruling that Minch could perform limited work activities despite his physical impairments.

Substantial evidence also supports the ALJ's conclusion that Minch's depression and personality disorder were not severe mental health impairments. Minch was hospitalized in December 2007 for mental health treatment after losing custody of his daughter. He was treated with an antidepressant and discharged in a stable condition approximately 10 days later. Thereafter, Minch was seen regularly by a psychiatrist, Dr. Steven Corder, who prescribed medications that were effective.[4] Expert agency psychological consultants opined that Minch retained the capacity for competitive employment with short and simple instructions and low social, pressure, and adaptive demands.

---

[4] In March 2008, at Minch's initial appointment, he presented with some mental status abnormalities, but he described "no specific symptoms" the next month. By June 2008, he presented with a generally normal mental state. Despite some fatigue, modest mental status findings, and "situational difficulties," Minch's mental status was essential normal in November and December 2008. In March 2009, which was just prior to Minch's arrest, Dr. Corder observed that Minch had an unkempt appearance, failed to make eye contact, and was "not able to work." Since his incarceration, prison records indicate that Minch's mental state has been generally stable.

Minch's challenges to the ALJ's conclusions lack merit. For instance, he argues that the ALJ erred in discounting Dr. Corder's assessment that he was "not able to work." But that assessment occurred in March 2009, when Minch was experiencing stress from his imminent arrest, and it conflicts with Dr. Corder's reports that Minch's mental state was otherwise stable. Moreover, Dr. Corder's comment is not entitled to special significance because whether Minch is able to work is an issue reserved for the ALJ. See Bjornson v. Astrue, 671 F.3d 640, 647-48 (7th Cir. 2012) (citing 20 C.F.R. § 404.1527(e)(3)).

Minch also believes that the ALJ "mischaracterized [his] answers" on a questionnaire pertaining to his ability to perform activities of daily living. We disagree. Although Minch's answers reflect that he had some difficulty performing certain tasks, such as leaning over a sink to shave, tying his shoes, and mowing the lawn, he did report that he was able to do laundry and vacuum, prepare meals for himself, maintain his finances, and keep appointments. Therefore, substantial evidence supports the ALJ's determination that Minch "has mild limitations in his activities of daily living."[5]

Finally, Minch argues that the ALJ did not properly consider the vocational expert's responses to hypothetical questions. See Johnson v. Comm'r of Soc. Sec., 529

---

[5] There is also no merit to Minch's suggestion that the ALJ relied solely on his ability to perform activities of daily living in concluding that he did not have an impairment that met or equaled a disabling impairment listed in the applicable regulations. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 and 12.08. The restriction on activities of daily living is only one of several criteria that an ALJ examines. See Blackburn v. Colvin, 761 F.3d 853, 858-59 (8th Cir. 2014) (discussing criteria and how they are satisfied). Here, the ALJ properly examined all of the criteria and concluded that Minch did not satisfy any of them.

7

F.3d 198, 205-06 (3d Cir. 2008) (noting that ALJs routinely pose hypothetical questions to vocational experts in order to determine a claimant's ability to perform alternative employment). The expert testified that a hypothetical individual of Minch's age, education, work experience, and residual functional capacity could perform certain light work in unskilled positions that do not require face-to-face contact with the public, work as part of a team, or frequent interaction with a supervisor. When asked by the ALJ whether such an individual could perform "work which is not repetitive in nature, … in an effort for the person not to be performing the same movement with their body over and over again all day long," the expert stated that there were no such entry level positions available. Minch faults the ALJ for "disregard[ing]" the answer to the latter hypothetical question. Notably, however, the record did not credibly establish that Minch's limitations required that he perform non-repetitive movements. Therefore, the ALJ properly did not rely on that response. Cf. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (stating that the "ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.").

For these reasons, and in light of our overall examination of the record, we will affirm the judgment of the District Court.