NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2031
_____

PATRICIA ATKINS, on behalf of
Kimberly Michelle Atkins (Deceased),
                                        Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-17-cv-01086)
District Judge: Honorable Alan N. Bloch
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2020
_____

Before: JORDAN, GREENAWAY, JR., and KRAUSE *Circuit Judges*.

(Opinion Filed: April 24, 2020)
_____

OPINION*
_____

GREENAWAY, JR., *Circuit Judge*.

_____

 * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

# I. INTRODUCTION

Patricia Atkins ("Appellant")[1] seeks review of the District Court's decision affirming the Commissioner of the Social Security Administration's ("Commissioner") denial of Kimberly Michelle Atkins's ("Claimant") claims for both disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income benefits ("SSI") under Title XVI of the Social Security Act ("Act").[2] For the reasons set forth below, we will affirm the judgment of the District Court.

# II. BACKGROUND

## A. Procedural History

Claimant filed an application for DIB, as well as SSI, on October 18, 2013, alleging disability beginning on January 10, 2010. On July 17, 2014, the application was denied, and she subsequently requested a hearing before an Administrative Law Judge ("ALJ").

---

[1] On May 4, 2016, while the appeal of the decision of the Administrative Law Judge was pending before the Appeals Council, Kimberly Michelle Atkins died. Patricia Atkins, Kimberly Michelle Atkins's mother, was determined to be next of kin, and is the substitute party in this case.

[2] Appellant's claim for SSI was rendered moot when Claimant died. Thus, this case only pertains to the DIB claim. *See* 20 C.F.R. § 416.542(b)(4) (noting that only in certain circumstances, such as when a claimant dies with a surviving spouse or when a child dies while living with a parent, can an SSI claim still be valid after the claimant's death).

On August 25, 2015, the ALJ held a hearing where the Claimant and an impartial vocational expert testified. The ALJ issued a decision on November 2, 2015, finding that Claimant was insured through September 30, 2013, but the ALJ determined that Claimant was not disabled from January 10, 2010 through the date of the decision. On January 5, 2016, Claimant sought review before the Appeals Council. While Claimant's request for review was pending, she died on May 4, 2016. On June 19, 2017, the Appeals Council denied review. On August 21, 2017, Appellant sought review in the United States District Court for the Western District of Pennsylvania, which affirmed the final decision of the Commissioner. This timely appeal followed.

**B. Claimant's Background**

The primary basis of Claimant's application for benefits is her asthma,[3] as she asserted that she had suffered daily asthmatic attacks. Claimant stated that she had suffered from these daily asthma attacks since 2003, and that the attacks were exacerbated by activities such as climbing stairs. As a result of her asthma, Claimant complained of shortness of breath, chest pain, and respiratory failure. Although Claimant was diagnosed with asthma in approximately 2006 or 2007, she experienced few

---

[3] "Asthma is a chronic lung disease that causes episodes of difficult breathing. When you have asthma, your airways are very sensitive and may react to a number of different triggers, such as smoke, pollens, or infections. This leads to constricted and inflamed airways that cause airflow obstruction." Pat Bass, *What Is Asthma*, VERYWELL HEALTH (Dec. 6, 2019), https://www.verywellhealth.com/asthma-overview-4014760.

documented instances of asthma attacks after the alleged onset date.[4]  In 2012, Claimant underwent spirometry testing which produced an FEV1/FVC of roughly 61%, indicating a moderate obstruction of her airways.[5]  In 2013, two weeks after falling, Claimant visited the emergency room complaining of headaches.  However, Claimant denied that she had chest pain or difficulty breathing during this emergency room visit.  On July 5, 2015, Claimant again visited the emergency room, complaining of shortness of breath, but showed "dramatic improvement after treatment," and was released.  A.R. 373.  Claimant returned to the emergency room on July 19, 2015, citing her asthma and a swelling of her left leg.  Her "lungs [were] well expanded and [were] clear," and "[n]o acute change [from her July 5 visit was] identified."  A.R. 443.  After treatment, "she [was] feeling markedly improved."  *Id.*  Despite a recommendation for additional testing regarding her leg, she refused that treatment and was discharged.  Claimant also asserted

---

[4] Claimant was hospitalized several times before the alleged onset date for matters related to her asthma.  In 2007, she was admitted to the hospital twice for shortness of breath.  In 2008, she was admitted once for "RESP FAILURE STATUS ASTHMATICUS."  A.R. 261.  Finally, in 2009, she was admitted once for chest pains.

[5] "FEV1 is the maximal amount of air you can forcefully exhale in one second.  It is then converted to a percentage of normal.  For example, your FEV1 may be 80% of predicted based on your height, weight, and race.  FEV1 is a marker for the degree of obstruction with your asthma."  Pat Bass, *Forced Expiratory Volume (FEV1) and Asthma*, VERYWELL HEALTH (Jan. 11, 2020), https://www.verywellhealth.com/forced-expiratory-volume-and-asthma-200994.  A severe percentage of FEV1/FVC ratio, which measures the amount of air one can forcefully exhale from their lungs, would typically be in the range of 35%-49%, and moderate would be 50%-70%.  *See* Deborah Leader, *FEV1/FVC Ratio in Spirometry*, VERYWELL HEALTH (Jan. 29, 2020), https://www.verywellhealth.com/fev1fvc-ratio-of-fev1-to-fvc-spirometry-914783.

that she suffered from manic depression. She noted that she was socially reclusive and had regular crying spells. Ultimately, Claimant was "diagnosed with moderate recurrent major depressive disorder and with panic disorder with agoraphobia." A.R. 38.

In 2013, a treating physician indicated that when treatment for her depression began in April 2013, "the claimant was nearly bedridden due to her depression and panic disorder." *Id.*; *see also* A.R. 263 (Claimant "was nearly bedridden w/ Panic & Depression."). Although her depression improved with treatment, she stopped attending such treatment, since she could not consistently find transportation. Moreover, although Claimant alleged that she "routinely [had] thoughts of suicide," she denied such thoughts during a 2013 psychiatric treatment. A.R. 38. However, in 2015, the medical evidence only supported the conclusion that Claimant suffered from some anxiety. Finally, Claimant alleged that she suffered from right shoulder pain, an irregular heartbeat, arthritis, migraines, and a blood clot. However, the medical evidence does not support that Claimant suffered from any of these impairments.

In response to the ALJ's question of who Claimant's primary doctor was, Claimant testified that she did not "really have a . . . primary doctor," but that Dr. Mark Schneiderman was her "breathing doctor." A.R. 60.

Regarding her work experience, Claimant most recently worked as a fast food cook and a grocery store clerk. In the 1970s, she had worked as a money shredder at the Federal Reserve Bank.

On May 4, 2016, Claimant died. Her cause of death was noted as status asthmaticus.[6]

## C. ALJ Decision

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a) and § 416.920(a).[7] The ALJ followed the steps in order, at step one finding that Claimant had not engaged in substantial gainful activity since January 10, 2010, the alleged onset date. At step two, Claimant was found to have the following "severe impairments: asthma; major depressive disorder; and, panic disorder with agoraphobia." A.R. 31.

At step three, the ALJ found that Claimant's impairments or combination of impairments were not of a severity to meet or equal the criteria of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1–specifically the elements of listing sections 3.03, 12.04, and 12.06.

Before considering step four–that is, whether Claimant had the residual functional capacity ("RFC") to perform the requirements of her past relevant work–the ALJ

---

[6] Status asthmaticus is an "acute, severe, and prolonged asthma attack." MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 1629 (6th ed. 2002).

[7] Under the sequential evaluation process, the ALJ must determine whether a claimant (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3) has an impairment that would render her per se disabled; (4) retains "residual functional capability" (RFC) to perform past work; and (5) can perform any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520.

evaluated Claimant's RFC.  The ALJ determined that Claimant had the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(c) and § 416.9679(c), with certain limitations.  Those limitations were: "she cannot climb ladders, ropes, or stairs and can only occasionally climb ramps.  She can occasionally reach with the right upper extremity.  Additionally, the claimant should avoid concentrated exposure to pulmonary irritants, temperature extremes, humidity, and wetness."  A.R 35.

Given the RFC determination, the ALJ found at step four that Claimant lacked the capacity to perform the requirements of her past relevant work as a fast food cook and grocery store clerk, accepting the testimony of a vocational expert.

Nevertheless, at step five, based on testimony from the vocational expert, the ALJ concluded that, considering Claimant's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Claimant could perform despite her impairments, such as produce packer, hand packer, and store laborer. Claimant was therefore found not disabled.

**D. District Court Decision**

The District Court affirmed the final decision of the Commissioner.  The District Court found that substantial evidence supported the ALJ's findings, as well as the ultimate determination, based on all the evidence, that Claimant was not disabled.  *Id.*

The District Court also denied Appellant's request to remand the case so that Claimant's death certificate could be considered as new evidence by the ALJ in reevaluating Claimant's application for benefits.  Pursuant to sentence 6 of 42 U.S.C

§ 405(g), a case can be remanded for consideration of new evidence if the evidence is material, meaning that the evidence could have changed the outcome of the determination, and the evidence was not previously available. The District Court found the death certificate not to be material, since the death certificate is from a date after which the ALJ had issued the decision, and since it does not relate to the relevant time period under consideration by the ALJ.

The District Court rejected Appellant's argument that the ALJ did not give proper weight to the Claimant's treating sources when considering the evidence because Appellant did not give any indication as to which treating sources were alleged to have been improperly disregarded. Further, the District Court found that the ALJ properly explained the reasons for giving weight to certain opinions.

The District Court then rejected Appellant's argument that the ALJ failed to use a medical advisor to establish the onset date of Claimant's disability. The District Court determined that the onset date was never at issue in this case, and thus there was never a need for a medical advisor's assistance.

Finally, the District Court rejected Appellant's contention that the ALJ erred in failing to consider whether Claimant satisfied the Medical-Vocational Guidelines at the light exertional level. The District Court determined that the ALJ's decision to not rely solely on the Medical-Vocational Guidelines, but to invoke the assistance of the vocational expert to determine how the Claimant's limitations affect her abilities, was proper. Furthermore, the Appellant never explained how the ALJ erred in finding that the

8

Claimant was capable of performing work at the medium level. Therefore, the District Court found that substantial evidence supported the ALJ's conclusion that the Claimant had the ability to work at the medium exertional level.

## III. DISCUSSION

Before us, as she did before the District Court, Appellant seeks reversal of the ALJ's decision, or, in the alternative, remand for consideration of Claimant's death certificate.[8] Although Appellant mentions several arguments,[9] her overarching contention is that the ALJ's decision was not based on substantial evidence. In support of this argument, Appellant asserts that the ALJ failed to give appropriate weight and consideration to all the evidence of record. For instance, Appellant asserts that Claimant's RFC was not properly analyzed. Moreover, Appellant believes that Claimant's death certificate, which states that Claimant died of status asthmaticus, proves that the Claimant had a severe impairment that resulted in her death, thus demonstrating

---

[8] Appellant also asserts that "there may be additional substantial evidence from hospital admissions that were within months prior to the [Claimant's] death . . . ." Appellant's Br. 6. However, Appellant never explains how this evidence from after Claimant's last insured date would be material to Claimant's application. Since materiality is required by sentence 6 of § 405(g), this alleged additional evidence does not provide a basis for remand.

[9] Even though most of Appellant's arguments are poorly articulated, Appellant has not forfeited the right to have all of her arguments reviewed by this Court. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) ("[F]orfeiture is the failure to make the timely assertion of a right, an example of which is an inadvertent failure to raise an argument. Waiver, in contrast, is the intentional relinquishment or abandonment of a known right." (internal citations and quotation marks omitted)).

9

that the ALJ did not consider all the evidence.

Furthermore, Appellant contends that the ALJ disregarded Claimant's treating sources in her decision, and that the ALJ failed to use a medical advisor to establish the onset date of Claimant's impairments.

Finally, Appellant asserts that the ALJ failed to consider the possibility of Claimant meeting and satisfying the Medical-Vocational Guidelines at the light exertional level as of her 55th birthday. Appellant believes that the hypothetical individual that the ALJ described to the vocational expert was more like a hypothetical individual at the light level, rather than the medium level, as suggested by the ALJ.

**A. Standard of Review**

In DIB cases, this Court's role "is limited to determining whether [the Commissioner's] decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g) and *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986)). The Supreme Court recently reaffirmed the scope of this Court's review of an ALJ's fact-finding, noting that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (second alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for such evidentiary sufficiency is "not high," and as the Supreme Court has said, is "more than a mere scintilla." *Id.* (quoting *Consol. Edison*, 305 U.S. at 229).

10

Therefore, the substantial evidence standard requires that this Court accord deference to the factual findings of the ALJ and not "weigh the evidence or substitute [our own] conclusions for those of the fact-finder." *Rutherford v. Barnett*, 399 F.3d 546, 552 (3d Cir. 2005) (alteration in original) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992)).  If we determine that substantial evidence supports the ALJ's decision, we must affirm.

### B. Complete Record of Evidence

Appellant argues that the ALJ failed to consider all the medical evidence of record.  Appellant's brief states that "[w]e also argue that the ALJ failed to give appropriate weight and consideration of this substantial evidence of record regarding her asthma, headaches, depression, arthritis, right shoulder pain, irregular heartbeat and deep vein thrombosis, all of which, in combination, led to her unfortunate death on May 4, 2016."  Appellant's Br. 11.  This conclusory statement, with no factual support, lacks merit.

Although Appellant provides several cites to the record in support of this claim, none of the record cites reference evidence the ALJ overlooked.  Specifically, Appellant states that "substantial medical evidence of record indicates that [Claimant] has a long treatment history of asthma.  Tr., pp. [sic] 1-6; 33-37; 288-328; 342-532."  Appellant's Br. 11.  However, the record cites do not support Appellant's assertion.  Pages 1-6 include the notice of action of the Appeals Council, the order of the Appeals Council, and an exhibit list.  None of these documents include medical records.  Pages 33-37 are part

11

of the ALJ's decision.  Pages 288-328 include records from Claimant's emergency room treatment on December 29, 2013, the results of the spirometry test, and invoices for reproduction of medical records.  The ALJ discussed these medical records.  Finally, pages 342-532 reference almost 200 pages of medical reports, without any indication as to which specific page or report Appellant would have us review.  As we have previously stated, "[j]udges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (quoting *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)).

Lacking any direction from Appellant as to the specific reports at issue, we will not scour the record to attempt to discern Appellant's position.  There does not appear to be any evidence that the ALJ failed to consider.  Therefore, we reject Appellant's overarching contention that the ALJ failed to consider all the medical evidence of record.

**C. Death Certificate**

Appellant argues that the death certificate, which stated the cause of death as status asthmaticus, supports a conclusion that Claimant should have been awarded a disability judgment.  However, Claimant's death certificate serves as evidence from after the relevant time period, which in this case is January 10, 2010, the alleged onset date, to September 30, 2013, Claimant's last date insured.  Additionally, while the ALJ determined that Claimant's asthma was a severe impairment, the fact that she died of an asthmatic episode does not alone prove that she was disabled during the relevant time period under consideration by the ALJ.  *See Szubak v. Sec'y of Health & Human Servs.*,

12

745 F.2d 831, 833 (3d Cir. 1984) (the later deterioration of a previously non-disabling condition is not material to the initial disability determination). Thus, this argument fails.

### D. Treating Sources

Appellant asserts that the ALJ "disregarded [Claimant's] treating sources in her decision." Appellant's Br. 11. However, Appellant does not provide any specific example of the ALJ disregarding any treating sources. In support of Appellant's contention, Appellant notes that usually more weight is given to the opinion of an examining source than the opinion of a non-examining source. Appellant further states that this "was not properly done by the ALJ." Appellant's Br. 12.

Absent any support for this contention, we conclude that Appellant has not preserved this argument. *Barna*, 877 F.3d at 145 ("[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing.").

### E. Onset Date

Next, Appellant claims that the ALJ failed to use a medical advisor to establish an onset date. However, there is no debate in this case as to Claimant's alleged onset date. Therefore, a medical advisor's assistance in establishing an onset date was not needed. *See Walton v. Comm'r of Soc. Sec.*, 243 F.3d 703, 708 (3d Cir. 2001) (noting that an ALJ should use the assistance of a medical advisor in determining the onset date when the alleged onset date is at issue and cannot reasonably be inferred).

**F. Medical-Vocational Guidelines**

Appellant also asserts that the ALJ's determination that Claimant could perform medium level work, but not light level work such as her past relevant work, is wrong and contradictory. Appellant asserts:

> The District Court failed to address the issue regarding the contradiction of the [Claimant] being found as being incapable of performing past work at the light level, but capable of performing other jobs at the medium skill level. The jobs identified by the vocational expert required an exertional level higher than the [Claimant's] past work.

Appellant's Br. 3 n.1.

Appellant's argument fails because the vocational expert testified that Claimant's past work was medium, as opposed to light, and Claimant's counsel did not challenge that testimony at the hearing. Furthermore, given the limitations identified by the ALJ, the vocational expert testified that Claimant could not perform her *specific* past relevant work as a fast food cook and grocery store clerk. Therefore, we reject Appellant's contention that Claimant's inability to perform her past relevant work is relevant to Claimant's ability to perform other medium level jobs with the specified restrictions.

The ALJ found that Claimant had the ability to perform all or substantially all the requirements of a range of medium work, with additional limitations. To determine the extent to which these additional limitations would erode Claimant's capacity to perform jobs in the unskilled occupational base, the ALJ asked the vocational expert to evaluate whether jobs exist in the national economy for a hypothetical individual with Claimant's age, education, work experience, and RFC. Thus, by invoking the assistance of the

14

vocational expert, the ALJ did not solely rely on the Medical-Vocational Guidelines, but rather used the guidelines as a framework in making the determination that Claimant could perform medium work. The vocational expert then testified that, given the criteria of the hypothetical individual, someone like the Claimant would be able to perform jobs that exist in significant numbers in the national economy such as produce packer, hand packer, and store laborer.

Since Appellant never explains how or why the limitations imposed by the ALJ were for someone who could perform work at a light level, rather than a medium level, and since substantial evidence supports the ALJ's determination that Claimant could perform work consistent with her RFC, Appellant's claim has no merit.

## IV. CONCLUSION

In reviewing the Commissioner's decision, it is clear that the ALJ's determinations were supported by substantial evidence, there was no need for medical assistance in determining the onset date, and the ALJ properly followed the procedures set out in the Medical-Vocational Guidelines. Appellant forfeited her argument that the ALJ failed to consider treating sources. Further, the case should not be remanded to consider the death certificate because it is not material. For the foregoing reasons, we will affirm the decision of the District Court.